**In re the MARRIAGE OF Jo Ann WOOD f/k/a Jo Ann Gasiliunas f/k/a Jo Ann Graziano and Peter Graziano.**

**Upon the Petition of**

**Jo Ann Wood f/k/a Jo Ann Gasiliunas f/k/a Jo Ann Graziano, Appellee,**

**And Concerning**

**Peter Graziano, Appellant.**

**No. 95–1398.**

Court of Appeals of Iowa.

May 29, 1997

Timothy A. Lynch of Van Orsdel, Lynch & Rouse, L.C., Des Moines, and F. John Spellman of Duffy, Spellman & Clark, Des Moines, for appellant.

Leslie Babich of Babich, McConnell & Renzo, P.C., Des Moines, for appellee.

Considered by HUITINK, P.J., and STREIT and VOGEL, JJ.

VOGEL, Judge.

Peter Graziano appeals a modification of the parties' dissolution decree requiring him to pay college expenses for the parties' children. Peter contends the district court erred in requiring one parent to pay college expenses and in setting the amount that is to be paid. Jo Ann requests appellate attorney fees.

■ **Scope of review.** In this equity action, our scope of review is de novo. Iowa R.App. P. 4; *State ex rel. Tack v. Sandholdt,* 519 N.W.2d 414, 416 (Iowa App.1994). We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305

N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court especially when considering credibility of witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7).

***College expenses.*** Jo Ann and Peter Graziano's marriage was dissolved in 1983. Among other things, Jo Ann was awarded primary care of the parties' minor children, Peter, Jr., born December 14, 1973; Jennifer, born October 21, 1976; and Andrew, born February 15, 1978. Peter was ordered to pay $325 per month in child support.

A 1990 modification of the decree set Peter's child support for three children at $1482 per month, for two children at $1259 per month, and for one child at $874 per month. This was in anticipation of the older children becoming independent.

On March 20, 1995, Jo Ann filed a modification petition requesting that Peter be ordered to pay towards the children's college expenses. Following a hearing, the district court ordered Peter to pay: (1) $5015 toward Peter, Jr.'s college expenses; (2) 70% of the approximate $9000 constituting Jennifer's college expenses while not residing at home; and (3) 70% of the approximate $5000 constituting Andrew's college expenses if he were to reside at home.[1]

"Support" is defined in Iowa Code section 598.1(2) (1995) as including:

... support for a child who is between the ages of eighteen and twenty-two years who ... is, in good faith, a full-time student in a college, university, or community college, or has been accepted for admission to a college, univeristy, or community college and the next regular term has not yet begun....

■ Iowa Code section 598.21(4) provides upon every dissolution, annulment, or separate maintenance judgment, the court may order either or both parents to pay reasonable amounts in the support of a child. *Id.* Iowa Code section 598.1(6) imposes an obligation in some cases on parents whose marriages have been dissolved to support unmarried adult children who are students. *See Sandholdt,* 519 N.W.2d at 416. Educational support is not required in all cases. *San-*

1. This case was tried prior to the 1997 enactment of Iowa Code section 598.21(5A) which provides: "The amount paid by each parent shall not ex- ceed thirty-three and one-third percent of the total cost of postsecondary education."

*dholdt,* 519 N.W.2d at 418. In determining whether such an award is proper, we look to factors such as the financial condition of the parents, the ability of the child for college work, the age of the child, and whether the child is self-sustaining. *Id.; In re Marriage of Lieberman,* 426 N.W.2d 683, 685 (Iowa App.1988).

■ We consider the following financial sources in determining the extent that children are self-sustaining and can pay part or all of their own higher education expenses: (1) grants, awards, scholarships and loans; (2) personal assets; and (3) capable and able to maintain part-time employment. *See In re Marriage of Byall,* 353 N.W.2d 103, 108 (Iowa App.1984); *In re Marriage of Steele,* 502 N.W.2d 18, 22 (Iowa App.1993).

■ We note a parent's financial contribution should not be more than a parent can afford to pay. *Lieberman,* 426 N.W.2d at 685. When parties are of limited financial means, there is no need to obligate parents for college expenses beyond those of attending a state-supported university in the state of the student's residence. *Id.* at 686.

Peter was forty-three years of age at the time of trial, married, and had been employed recently with an Omaha-based computer company, earning approximately $80,000 per year, or $4712 net per month. Peter's wife, Connie, showed gross earnings in 1994 of approximately $16,165 and net earnings of $13,608.

Jo Ann Wood was single and forty-two years of age at the time of trial, residing in a suburb of Omaha with two of the parties' three children, Jennifer and Andrew. She had been working at Utell International as an assistant to the executive vice president for three and one-half years preceding trial.

She made approximately $1846 net income per month, and was receiving $1600 per month from Peter for child support, totaling $3446 per month. However, we note at the time of trial, Peter had a child support arrearage of approximately $10,000–$11,000, down from the $24,000 he owed in December of 1994.[2] Jo Ann's living expenses and installment payments amounted to $3377 per month. Both Jo Ann and Peter were in good health at the time of trial.

*Peter, Jr.* After considering the parents' financial status, we next examine Peter, Jr.'s ability to perform college work, his age, and, finally, we address the question as to whether Peter is self-sustaining.

Peter, Jr. was twenty-one at the time of trial and lived in Omaha with three other male students, attending Creighton University full-time. He started his senior year in September 1995 and maintained a 3.3 grade point average. Peter, Jr. was employed at the time of trial, working thirty-five hours per week at $6.87 per hour, netting approximately $190 per week. Peter, Jr. had been offered a financial aid package consisting of $6300 in grants and scholarships and $7500 in student loans to cover an estimated $18,815 in total educational expenses for the 1995–96 academic school year for a full-time dependent student living off campus.[3] Peter, Jr. was left with a short-fall of $5015. This is the amount Jo Ann requested Peter to pay between the time of trial and Peter, Jr.'s twenty-second birthday in mid-December of 1995. The district court so ordered Peter pay this amount toward Peter, Jr.'s college expenses.[4]

■ We find Peter is able to pay the $5015 toward Peter, Jr.'s expenses. We additionally find Peter, Jr. was not entirely self-sus-

2. The trial court noted Peter's obligation to pay for Peter, Jr.'s college expenses would cease as of December 14, 1995, and that Peter will have paid off the arrearage as of approximately June of 1996. Consequently, Peter would have a "very substantial disposable income to help assist Jennifer and/or Andrew with their respective college educations...."

3. Peter, Jr. had already borrowed around $15,000 in student loans to finance his education.

4. Jo Ann obtained a $4,000 loan in 1992 to pay for part of Peter, Jr.'s educational expenses, and she has assumed personal responsibility for repayment of this loan. Peter, Jr. lived with Jo Ann from June of 1992 until September of 1994. Jo Ann provided him at that time with room, board, and utilities. Jo Ann claims that, to her knowledge, Peter never directly contributed to Peter, Jr.'s education, although Peter said he gave Peter, Jr. $1000 within three months preceding the trial. Peter said he paid other unspecified amounts prior to that time.

taining. His scholarships, loans, and personal assets left him $5015 short of meeting his educational expenses. After considering the facts in Peter, Jr.'s case in conjunction with the standards set forth above, we conclude the trial court was correct in ordering Peter to pay $5015 toward Peter, Jr.'s college expenses. From the financial information in the record, we note that it would cost a full-time student, living off-campus at a Nebraska state university, approximately $36,000 at a minimum for a four-year education. Ordering Peter to pay 14% of Peter, Jr.'s total college education ($5015 out of an estimated $36,000) is both reasonable and equitable. We thus affirm on this issue.

*Jennifer.* Jennifer was eighteen years old at the time of trial and in good health. She had maintained a 3.3 grade point average in high school and had been accepted as a full-time student at Arizona State University for the fall 1995 school year. Jennifer had worked for a catering business in Omaha for approximately thirty-five hours per week at $8.00 per hour. She saved $1200 for college expenses and anticipated she would have saved $2000 for her first fall semester at Arizona, but she also had been covering all her personal expenses such as clothing and entertainment from income earned at this job. Jo Ann had been providing her with room and board, as well as other expenses, and planned on continuing to provide for Jennifer when she is home for vacations from school.

■ Jennifer was offered $1500 in grants from Arizona State and she was found eligible for an additional $13,487 in loans for a total of $14,987. The school estimated the educational costs for attending full-time while living on campus were $14,987. The trial court ordered Peter to pay 70% of the approximate $9000 it would cost Jennifer to attend a Nebraska state university full-time while not living at home. We conclude Peter is financially able to provide these college expenses for Jennifer, that she has demonstrated her aptitude to perform college course work, and that she is not self-sustaining. For these reasons, we accordingly affirm the district court on this issue.

*Andrew.* Andrew was seventeen years of age at the time of trial and had just completed his junior year in high school. He was scheduled to graduate in June of 1996. He had a 2.5 grade point average and planned on attending the University of Nebraska at Omaha. Andrew intended to live with Jo Ann for his first one or two years. The trial court ordered Peter to pay 70% of the approximate $5000 in expenses it would cost a full-time student living at home to attend a Nebraska state university. We affirm the district court's determination of this issue.

*Home base contributions.* Jo Ann had already been providing for Peter, Jr.'s college expenses when she petitioned the court to order Peter to "reasonably contribute towards" the children's college educational expenses. In addition to the money Jo Ann has contributed to Peter, Jr.'s college expenses, the trial court found: (1) Jo Ann had provided room and board for Peter, Jr. from June 1, 1992, to September 1, 1994; (2) Jo Ann intended to provide a home base for Jennifer for school vacations; and (3) Jo Ann intended to provide room and board for Andrew when he would begin college. The trial court did not order Jo Ann to contribute further to the children's college expenses, stating:

> ... it is evident that this court need not impose any obligation upon the petitioner [Jo Ann] to contribute toward the children's college education. She will obviously contribute whatever is necessary to assure that their children obtain a college education without any court order.

Thus, while Peter was ordered to pay part of his children's college expenses, the trial court did not deem it necessary to order Jo Ann to pay for part of the college expenses. The trial court recognized that some financial support would still be required of Jo Ann. Given the trial court's assessment of the sincerity of Jo Ann's testimony and history of supporting Peter, Jr.'s education without a court order, the trial court stopped short of ordering her to pay a fixed amount or percentage of the children's educational expenses.

■ Peter argues it is contrary to our case law to give Jo Ann credit for providing a

"home base" for the children while they are in college. *See In re Marriage of Byall,* 353 N.W.2d 103, 108–09 (Iowa App.1984). In *Byall,* this court rejected a mother's argument that she should receive credit for providing a home base for the college-aged children during their school vacations. *Id.* While we recognize providing a home base does not come without some cost to a parent, we agree that, standing alone, providing a home base for school vacations does not rise to the level of contribution to a child's college educational expenses. However, when a child *lives at home during the school year,* saving the expense of room and board normally paid to the school, the term "home base" becomes economically significant. Under this scenario, the parent provides daily for the expenses of the student, which decreases the overall cost of higher education. Therefore, the trial court was correct in considering the room and board expense Jo Ann has already incurred for Peter, Jr. and will incur for Andrew.[5] However, we correct the trial court to the extent it considered Jennifer's college vacation expenses, or home base, as part of Jo Ann's contribution. This does not significantly decrease Jo Ann's contributions to the children's college expenses.

**Attorney fees.** Jo Ann requests appellate attorney fees. An award of attorney fees is not a matter of right, but rests within the court's discretion. *In re Marriage of Gilliam,* 525 N.W.2d 436, 439 (Iowa App. 1994). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Roberts,* 545 N.W.2d 340, 345 (Iowa App.1996). We determine Jo Ann is entitled to $2,000 appellate attorney fees. Having considered all the arguments and issues on appeal, we accordingly affirm the district court.

**AFFIRMED.**

---

5. Jo Ann stated in her testimony that she will, in addition to paying for Andrew's room, board, and utilities while he lives at home, also assume financial responsibility toward paying his insurance, car insurance, travel expenses, and clothing.