In re the MARRIAGE OF Linda S. ALES and Gary A. Ales.

Upon the Petition of

Linda S. Ales, Appellee,

And Concerning

Gary A. Ales, Appellant.

No. 98–297.

Court of Appeals of Iowa.

Jan. 27, 1999.

should shift to the recipient of the support. However, as Linda has carried her burden to show a continuing need for spousal support, we affirm.

***Background facts.*** A decree dissolving the marriage of Linda and Gary Ales was filed on April 8, 1992. The parties agreed that Linda should have primary physical care of their two children. In addition to child support, Gary was ordered to pay spousal support in the amount of $290 per month for ten years, to be decreased to $150 per month upon Linda's remarriage. Linda was allowed to reside in the marital residence until the youngest child was no longer eligible for child support, or until Linda's remarriage or death. The decree was silent as to the effect of cohabitation on these provisions.

In November of 1992, Linda's boyfriend, Melvin Owens, moved into the marital residence with Linda. He has lived there since that time and considers the residence as his permanent and legal address. Melvin's relationship with Linda has been an intimate one, yet they have no plans to marry and Linda has resolved to never remarry. To help with expenses, Melvin pays Linda an average of $300 in cash per month, which Linda uses to buy groceries and pay some bills. Melvin also contributes to various other household expenses, including vacation, entertainment, and car expenses, albeit sporadically.

In November of 1996, Gary filed a petition for modification of the decree, alleging that a substantial change of circumstances had occurred which required the sale of the marital residence and the reduction or elimination of spousal support. The district court found that in order to force the sale of the marital residence under the decree, Gary had to prove that Linda and Melvin were married either by ceremony or under common law. The court found Gary had shown no evidence of the former and had not presented sufficient evidence of the latter. The court further declined to eliminate or reduce spousal support, finding there was not sufficient evidence to show that Melvin was supporting Linda. Gary now appeals.

Stephen W. Newport and Cheryl J. Newport of Newport & Newport, P.L.C., Davenport, for appellant.

Morton A. Teitle and Justin A. Teitle of Teitle Law Offices, Davenport, for appellee.

Heard by SACKETT, P.J., and HUITINK and VOGEL, JJ., but decided en banc.

VOGEL, J.

Gary Ales appeals the district court order denying his petition to modify economic provisions of the parties' dissolution decree. His main contention is that his spousal support payments to his former wife, Linda, should decrease or terminate as she is cohabitating with another man. Because we find cohabitation carries similar attributes as remarriage, we determine that the burden of continuing spousal support upon cohabitation

■ ***Scope of review.*** Our review of this equitable proceeding is de novo. Iowa

R.App. P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa App.1996). We give weight to the fact findings of the district court, especially in determining the credibility of witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7).

*Spousal Support.* Gary asserts there has been a substantial change of circumstances that requires the reduction or elimination of spousal support because Linda has cohabited[1] with and been financially supported by Melvin for the past five years. He asserts that because the dissolution court did not anticipate Linda's resolution to never remarry, her relationship with Melvin should be considered a defacto marriage which triggers the reduction of spousal support provision in the decree.

■ A dissolution decree may be modified when there has been a substantial change in circumstances. Iowa Code § 598.21(8)(1997). The changed circumstances relied upon must be material and substantial, not trivial, more or less permanent or continuous, not temporary, and must be such as were not within the knowledge or contemplation of the court when the decree was entered. *See In re Marriage of Rolek*, 555 N.W.2d 675, 679 (Iowa 1996). The burden rests on the party seeking modification to establish such a change of circumstances by a preponderance of the evidence. *In re Marriage of Van Doren*, 474 N.W.2d 583, 586 (Iowa App.1991); *Thayer v. Thayer*, 286 N.W.2d 222, 223 (Iowa App.1979). Factors for the court to consider in determining whether there is a substantial change in circumstances include:

a. *Changes in the* employment, earning capacity, income or *resources of a party.*

b. Receipt by a party of an inheritance, pension or other gift.

c. Changes in the medical expenses of a party.

d. Changes in the number or needs of dependents of a party.

e. Changes in the physical, mental, or emotional health of a party.

f. Changes in the residence of a party.

g. *Remarriage of a party.*

h. *Possible support of a party by another person.*

I. Changes in the physical, emotional or educational needs of a child whose support is governed by the order.

j. Contempt by a party of existing orders of court.

k. *Other factors the court determines to be relevant in an individual case.*

Iowa Code § 598.21(8) (1997)(emphasis added).

■ When not specifically provided for in a decree, remarriage of the recipient spouse is an important, and often conclusive, factor in determining whether there has been a substantial change of circumstances justifying the elimination of spousal support. *See In re Marriage of Wendell*, 581 N.W.2d 197, 199–200 (Iowa App.1998). This is because it is contrary to public policy to permit a person to be concurrently supported by a spouse and a former spouse. *See In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985); *Id.* at 200. However, the ultimate issue in a modification action should be whether the recipient spouse has a continuing need for support despite the changed circumstances. *See In re Marriage of Schober*, 379 N.W.2d 46, 47 (Iowa App.1985). Therefore, the general rule which has developed in Iowa is that while the subsequent remarriage of a spouse does not result in automatic termination of an alimony[2] obligation, the burden shifts to the recipient to show that extraordinary circumstances exist which require the continua-

---

1. Under our current case law, cohabitation is evidenced by: (1) an unrelated person of the opposite sex living or residing in the dwelling house of the former spouse, (2) living together in the manner of husband and wife, and (3) unrestricted access to the home. *See In re Marriage of Harvey*, 466 N.W.2d 916, 917 (Iowa 1991); *In re Marriage of Gibson*, 320 N.W.2d 822, 824 (Iowa 1982).

2. Spousal support and alimony are used interchangeably by courts, however the term "alimony" was formally eliminated from our statutory law in 1980 and replaced by "spousal support." *See* Iowa Code § 598.21(3); *Wendell*, 581 N.W.2d at 201 n. 2 (Sackett, J., specially concurring).

tion of the alimony payments. *See Shima,* 360 N.W.2d at 828. The shift in the burden of proof stems from the concept that a person in possession of facts necessary to prove an issue, in this case economic need, should have the burden of proving those facts. *See* 29 Am.Jur.2d *Evidence* § 161 (1994).

Like remarriage, cohabitation can affect the recipient spouse's need for spousal support and is therefore a factor to consider in determining whether there has been a substantial change in circumstances warranting modification. *See* Iowa Code § 598.21(8); *see also Schober,* 379 N.W.2d at 47. Therefore, once the payor raises and proves cohabitation as a substantial change of circumstance, the issue then becomes whether the burden should shift to the recipient, as it does with remarriage, to prove a need for continued support. Although the issue was not before us in *In re Marriage of Wendell,* 581 N.W.2d 197 (Iowa App.1998), we noted that for purposes of later modification, "a shift in the burden of proof for cohabitation would appear consistent with our companion principles relating to remarriage and the underlying policy of the law." We feel the case before us now is the appropriate one to adopt this tenet. Therefore, in future cases the petitioner in a modification action will be required to show there is a cohabitation to meet the substantial change of circumstances requirement under Iowa Code section 598.21(8). Then, the burden will shift to the recipient to show why spousal support should continue in spite of the cohabitation because of an ongoing need, or because the original purpose for the support award makes it unmodifiable.

In this case, Gary asserts that Linda's cohabitation is so economically akin to remarriage as to be a substantial change of circumstances justifying the reduction or termination of spousal support. We agree that Linda's continuous cohabitation with Melvin is a substantial change of circumstances. However, after review of the record, we find that Linda has provided sufficient evidence to justify the continuation of spousal support. Thus, even under the burden-shifting requirement we adopt in this case, Linda would still meet her burden. While the parties dispute the amount of support Linda receives from Melvin, Linda maintains that whatever sporadic contributions Melvin makes to the household is just enough to cover the cost of his presence in the home and is not sufficient to contribute to her support. Gary argues that Linda's bank records from the past two years show positive discrepancies between her deposits and the income reported on her tax returns. However, Linda provided explanations for the extra deposits, testifying that she had received several thousand dollars from her father to help with medical bills, some money from Gary to cover the cost of their eldest daughter's wedding, in addition to income tax refunds. The trial court, who had the opportunity to assess the credibility of the witnesses, found that the evidence at trial indicated that Melvin's contribution to the household was only sufficient to provide for his own needs. We agree.

Moreover, the question of whether the recipient spouse's remarriage will terminate spousal support primarily depends in part on the purpose behind the original award. *See Wendell,* 581 N.W.2d at 200. The nature of the spousal support award, as provided under this decree, raises the question of whether the award is even modifiable. The decree provides, in relevant part:

> The Court finds that due to the 24 year length of this marriage, and Linda's absence from the employment market for much of those 24 years, Gary should pay spousal support in a reasonable amount for ten years. The Court finds that Gary should pay $290 per month as spousal support for Linda, which support should terminate on the earliest to occur of the expiration of ten years from the date of the first payment or the death of either party. It should be reduced to $150 per month on Petitioner's [Linda's] remarriage with termination on the earlier of the prior two conditions. *This takes into account both rehabilitative spousal support, and Linda's employment and contribution to support of the family during Gary's education.*

(Emphasis added). This language indicates that the dissolution court awarded both rehabilitative and what appears to be reimburse-

ment spousal support. Reimbursement alimony is based upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other. *In re Marriage of Francis,* 442 N.W.2d 59, 64 (Iowa 1989); *In re Marriage of Farrell,* 481 N.W.2d 528, 530 (Iowa App. 1991). Reimbursement alimony is not subject to modification. *Francis,* 442 N.W.2d at 64. Rehabilitative alimony serves to support an economically dependent spouse through a limited period of education and retraining; its primary goal is self-sufficiency. *See In re Marriage of Smith,* 573 N.W.2d 924, 926 (Iowa 1998); *In re Marriage of O'Rourke,* 547 N.W.2d 864, 866–67 (Iowa App.1996). However, a change in status, like remarriage, may alter the support picture and warrant a modification of rehabilitative alimony. *See Francis,* 442 N.W.2d at 64. Nonetheless, rehabilitative and reimbursement alimony are the types of alimony we most often allow to continue after a recipient spouse's remarriage. *See In re Marriage of Bell,* 576 N.W.2d 618, 622 (Iowa App.1998).

Even if we were to find that Linda's cohabitation justified a reduction or elimination of her rehabilitative spousal support, the decree did not distinguish how much of the award was rehabilitative and how much was reimbursement. For all of these reasons, we find that spousal support should continue.

*House.* The dissolution decree awarded each party an undivided one-half interest in the homestead. The decree also provided that Linda "be allowed to live in the homestead with the children of the parties until the first to occur of either the children neither being entitled to support, or Linda's remarriage, or Linda's death." As with his argument in regard to spousal support, Gary asserts that Linda's cohabitation with Melvin is an event which should trigger the sale of the marital residence.

■■■ The desirability of awarding the family home or right to live in the family home to the primary care parent is a factor for the dissolution court to consider before making the property distribution. *See* Iowa Code 598.21(1)(g). We believe that provisions which allow the primary physical care parent to remain in the family home are primarily made to provide stability for the children; the economic benefit to the parent is ancillary.

■■■ In determining that cohabitation necessitates the same burden of proof as remarriage for the recipient of spousal support, we necessarily include other provisions of decrees implicating the effect of cohabitation as a substantial change of circumstances. As with spousal support, Linda has demonstrated that there continues to be an economic need for her to reside in the former marital residence. Moreover, the parties' youngest child continues to reside with Linda in the home, thus providing stability for her. We agree with the district court's determination that the provision in the decree is not triggered by Linda's cohabitation.

■■■ *Attorney fees.* Linda requests that she be awarded appellate attorney fees. An award of attorney fees on appeal is not a matter of right, but rests within the discretion of the court. *In re Marriage of Benson,* 545 N.W.2d 252, 258 (Iowa 1996). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *In re Marriage of Wood,* 567 N.W.2d 680, 684 (Iowa App.1997). After considering these factors, we award $1000 in appellate fees to Linda on appeal. Costs of this appeal are taxed to Gary.

Having considered all issues properly before us on appeal, we hereby affirm the decision of the district court.

**AFFIRMED.**

All judges concur except SACKETT, C.J., STREIT, MAHAN, and ZIMMER, JJ., who specially concur.

SACKETT, C.J. (concurring specially)

I, too, would affirm the district court's decision. Gary's petition to modify his alimony award based on Linda's cohabitation with a member of the opposite sex should be denied. I applaud the attempt of Judge Vogel's opinion to (1) provide clearer direction on the issue that has made for struggles in the courts over whether and when

cohabitation should terminate alimony, and (2) clarify the language addressing the issue contained in *In re Marriage of Wendell*, 581 N.W.2d 197 (Iowa App.1998) (Sackett and Huitink, JJ., specially concur). That specific language provides in making the determination a court, "strikes an appropriate balance between the interest of the parties ... consistent with our prevailing companion principles and the underlying policy of law." *Id.* at 201.

I continue to be troubled by a decision on modification of alimony or spousal support awards being premised on principles formulated at a time and place in society (1) where women were denied employment based on their sex and/or martial status, and (2) when alimony was defined as "an allowance for maintenance of the wife." *See Russell v. Russell*, 4 Greene 26, 29 (Iowa 1853).

The Supreme Court, in establishing reimbursement alimony, *see In re Marriage of Francis*, 442 N.W.2d 59 (Iowa 1989), has admirably partially addressed what I consider the unfairness of prior conclusions that a former spouse only needed alimony until he or she found another spouse to support him or her. *Id.* at 62–66. Yet, the aged principles continue to be associated with awards of what we now define as "traditional alimony."

The muddle that exists on continuation of alimony after remarriage or cohabitation only advances future litigation and threatens the financial security of divorced persons.

I believe we should embark on a path where alimony is awarded only when the economic issues cannot be resolved through the division of property and pension rights. In such cases, alimony would only be awarded where there are insufficient property and pension rights to reach an equitable division. In most cases, this would be limited to situations where there is little property and one spouse has sacrificed his or her own career opportunities by assuming responsibility for home and/or children and alimony has to be awarded from future earnings. Even in such cases, alimony should not necessarily be a lifelong substance but should be determined after considering career opportunities available to the disadvantaged spouse. In that situation, there should be no reason to rob the disadvantaged spouse of a fair economic award because he or she decides to either remarry or just live with someone else who provides contribution to the household and the disadvantaged spouse. As long as we continue to engage in confusing rhetoric, we will only continue to leave divorced persons with substantial uncertainty to their economic future.

STREIT, J. (specially concurring)

I concur as to the result affirming the trial court, but dissent as to the pronouncements concerning cohabitation.

Two learned members of this court hold when a petitioner in a modification action proves a prior spouse receiving alimony is cohabitating, the burden shifts to the recipient to show why alimony should continue in spite of the cohabitation. By doing so, they blur the distinction between marriage and cohabitation which has been definite in Iowa. It has always been the law of this state that cohabitants are not afforded the same legal rights or responsibilities as married persons. Our supreme court heartily embraced this principle in *Slocum v. Hammond* by rejecting the concept of palimony. In *Slocum*, the court quoted this language:

> The policy of this state is that the de jure family is the basic unit of social order. This policy is reflected in statutes governing the right to marry. *See* Iowa Code chapter 595 (1983). It is reflected in the rule recognizing common law marriages. It is demonstrated by statutes defining the rights and responsibilities of husbands and wives toward each other and toward their children. *See, e.g.,* chapters 597 and 598. The policy favoring marriage is not rooted only in community mores. It is also rooted in the necessity of providing an institutional basis for defining the fundamental relational rights and responsibilities of persons in organized society. This policy would be subverted if persons could gain marital legal rights without accepting correlative marital legal responsibilities. We need go no further than this in rejecting plaintiffs' invitation in the present case.

*Slocum v. Hammond*, 346 N.W.2d 485, 491 (Iowa 1984) (quoting *Laws v. Griep*, 332

N.W.2d 339, 341 (Iowa 1983)). The majority's holding burdens cohabitant with responsibility of marriage without the corollary rights. In addition, although defined by the majority, cohabitation exists in a multitude of forms and is hard to pin down by definition, making this holding difficult to apply.

The majority uses this court's decision in *In re Marriage of Wendell,* 581 N.W.2d 197, 199–200 (Iowa App.1998) to support a change in the burden-shifting analysis. *In re Marriage of Wendell* does not support the change. In *Wendell,* we held because cohabitation has too many variables to be a defined future event, it would be inappropriate to use cohabitation as an event to automatically terminate alimony in an original dissolution decree. *See Wendell,* 581 N.W.2d at 200. Rather, we held, it was better to reserve the question of whether cohabitation would terminate alimony in an action to modify the decree based on a substantial change of circumstances under Iowa section 598.21(8)(a).

There is no reason to blur the legal distinction between marriage and cohabitation as the majority does here. Cohabitation should remain a factor to consider in determining whether there has been a substantial change in circumstances warranting modification. *See* Iowa Code § 598.21(8); *see also Schober,* 379 N.W.2d at 47; *In re Marriage of Wendell,* 581 N.W.2d 197 (Iowa App.1998). It should not be elevated to the same legal effect as remarriage.

MAHAN and ZIMMER, JJ., join this special concurrence.