# IN THE COURT OF APPEALS OF IOWA

No. 15-1798
Filed September 28, 2016

IN RE THE MARRIAGE OF JENNIFER MARIE HARTWIG
AND SHANNON RICHARD HARTWIG

Upon the Petition of
JENNIFER MARIE HARTWIG,
　　　　Petitioner-Appellee,

And Concerning
SHANNON RICHARD HARTWIG,
　　　　Respondent-Appellant.

_____

Appeal from the Iowa District Court for Shelby County, J.C. Irvin, Judge.


A former husband appeals from the district court's order dissolving the parties' marriage, disputing the physical care of the parties' children, the calculation of child support, and the property distribution. **AFFIRMED.**


Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, P.C., Carroll, for appellant.

J.C. Salvo and Bryan D. Swain of Salvo, Deren, Schenck, Swain & Argotsinger, P.C., Harlan, for appellee.


Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**VOGEL, Judge.**

Shannon Hartwig appeals from the district court's order dissolving his marriage to Jennifer Hartwig. He asserts on appeal: (1) it is in the children's best interests to be placed in the parties' joint physical care, (2) the court improperly determined his income for the purposes of calculating his monthly child support obligation, and (3) the court's property and debt division was inequitable. Both parties also request an award of appellate attorney fees.

Upon our de novo review of the trial record and the district court's order following our limited remand, we conclude the custody and care arrangement set forth by the district court is in the children's best interests. We conclude the court's assessment of Shannon's income for calculating child support was accurate based on the limited evidence provided. In addition, we affirm the property division and cash equalization payment as the values and debts assigned to the parties' property was within the permissible range of evidence. For these reasons, we affirm the district court's decision.

**I. Factual and Procedural Background.**

The parties were married in September 2007, and they have two minor children together, S.H, born in 2006, and K.H., born in 2010. The parties separated on June 1, 2014, and a temporary order establishing joint physical care was entered requiring the parties to alternate physical care on a weekly basis. No temporary child support was ordered.

Shannon owns his own business with his brother, S & S Construction, L.L.C., which he started during the parties' relationship. In addition to its construction work, the company also owns rental properties. One rental property

building was owned during the marriage, and two more were acquired by the company during the pendency of the dissolution proceedings. The three buildings contained an estimated total of thirty-two rental units, and each unit had a rental price from $450 to $525 per month.

During the marriage, Jennifer collected the rent and did the bookkeeping for the one apartment building owned at the time. She testified the rental payments were usually made in cash and one-half of the money would be deposited into the company's rental savings account and one-half of the money would be put into the company's safe in the shop. Jennifer asserted the gross annual income for the one building owned during the marriage, assuming all apartments were rented, would be $66,000. From this business, Jennifer estimated Shannon's income for child support purposes to be approximately $34,600, though Shannon claimed at trial he only took home $1600 per month from the business and Shannon's Schedule K-1 tax return form from the business's tax return showed he reported earning $14,220 in 2014. Very little evidence was admitted at trial that established the value of the assets and liabilities or the income and expenses of the company.

At the time of trial, Jennifer was employed as a freight broker and earned $34,600 with benefits. She remained living in the marital home. Jennifer testified she was the primary caretaker of the children throughout the marriage. Shannon disputed this characterization, testifying they shared parenting duties. To support her claims she should be granted physical care, Jennifer testified that the temporary weekly alternating parenting schedule was problematic for the children as behavioral issues were being exhibited at school. She believed it was in the

best interests of the children to be placed in her physical care with liberal visitation to Shannon, consisting of six overnights every two weeks, with exchanges taking place during the week. This schedule placed the children with Shannon from Wednesday until Friday on one week and from Thursday until Sunday on the other week. During the summer, the parties would again alternate care on a weekly basis with exchanges occurring on Sundays.

Shannon testified he preferred joint physical care with the schedule remaining the same as the temporary order: alternating weekly with exchanges occurring on Sunday. Shannon testified the parties tried a schedule similar to what Jennifer proposed during the pendency of the dissolution proceedings but the schedule, with midweek exchanges, was confusing to the children. As of the time of trial, Shannon was living in one of the rental units owned by S & S Construction; however, the majority of the time he stayed at his girlfriend's home with her child. At the time of trial, Shannon's girlfriend was also pregnant with Shannon's child, which Shannon testified would be born in February 2016. Shannon stated about three-fourths of the time he is with the children at issue in this case is spent at his girlfriend's home.

After hearing testimony and receiving exhibits at trial on July 17, 2015, the court issued its dissolution decree on September 8, 2015. The order placed physical care of the children with Jennifer, with visitation to take place pursuant to her suggested schedule, as well as set Shannon's child support obligation at $635 each month based on the income figures Jennifer submitted. The court ordered Shannon to pay Jennifer $9068.09 for child care expenses Jennifer paid while the parties were separated, which Shannon had agreed to do during trial.

Shannon was also ordered to pay one-half of Jennifer's credit card debt that totaled $9252.28 at the time of trial. Jennifer retained the marital home and the responsibility for its mortgage. Jennifer was awarded her 401K and IRA accounts, the joint savings account, and the certificate of deposit, and each party was awarded the bank accounts currently in their name. Shannon was awarded all of the assets of the construction company along with the associated debts, but he was ordered to pay Jennifer a cash equalization of $40,000.

Shannon filed a motion to amend or enlarge on September 22, 2015, requesting the district court expand its findings with regard to the reasons joint physical care was rejected, how it calculated the child support award, and its basis for ordering that the uncovered medical expenses be shared equally. The motion further stated the court's order did not make specific findings about the value of the assets awarded to each party and the subsequent basis for the $40,000 cash equalization payment Shannon was to make to Jennifer. Jennifer resisted the motion, and it came on for hearing on October 7, 2015. The court filed an order generally overruling Shannon's motion, though it modified the decree provisions regarding the payment of uncovered medical care expenses. It further found the physical care and visitation schedule was in the children's best interests, and the evidence supported the remaining portion of the court's order. Shannon appealed.

Upon our review of the record and the district court's decision, we determined a limited remand was in order so the district court could provide us with a supplemental order providing an item-by-item assessment of the value of the marital assets and debts. We also directed the court to make specific

findings as to the income of the parties and other factors considered in setting the monthly child support obligation. After the district court filed its supplemental order, we permitted the parties to submit supplemental briefing on the claims raised. Now that all supplemental submissions have been received, we address the issues raised by Shannon on appeal.

## II. Standard of Review.

We review dissolution and child custody proceedings de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007).

## III. Physical Care Arrangement.

Shannon first asserts joint physical care is in the children's best interests, as opposed to Jennifer having physical care. He also takes issue with the visitation schedule as set forth by the district court, arguing it is in the best interests of the children to adhere to the schedule set forth in the temporary custody order.

Physical care arrangements should be made with the best interests of the children in mind. *Id.* at 696. When considering what arrangement would be the most suitable, the court is to consider stability, continuity of caregiving, the degree of hostility between the parents and whether they can co-parent peacefully, as well as the parents' agreement on daily parenting matters. *Id.* at 697–98 (noting, with regard to the consideration of who was the primary caretaker, "the successful caregiving by one spouse in the past is a strong predictor that future care of the children will be of the same quality," but that joint physical care is preferred if both spouses contributed equally to the caretaking). When determining which spouse should receive physical care, "the factors of

continuity, stability, and approximation are entitled to considerable weight." *Id.* at 700.

In its order on the motion to amend or enlarge, the district court placed the children in Jennifer's physical care, stating Jennifer:

> has been and continues to remain the primary caretaker of the children's needs, whereas [Shannon] relies mainly on [Jennifer] to care for the children while spending the majority of his time at work, or with his now pregnant girlfriend, and to a far lesser time with his children. [Jennifer] is the parent who attends to the children's medical, educational, and physical needs, shouldering the financial obligations of the children. Given these facts, coupled with the opportunity to listen to the parties and observe their demeanor, the Court finds the primary care with [Jennifer] is in their best interests.

We agree that the record supports the conclusion Jennifer was the primary caretaker of the children in their day-to-day care as well as the one who, postseparation, was responsible for paying the bills incurred on behalf of the children. These factors weigh in favor of Jennifer receiving physical care. *See id.* at 697. While we agree with Shannon the record demonstrates the parties are able to co-parent more or less agreeably, we nonetheless conclude the factors present in this case establish it is in the children's best interests that physical care be with Jennifer.

We also agree with the district court the visitation schedule set forth in its order is in the best interests of the children. As testified to by Jennifer, the children began to develop problems while the weekly alternating temporary custody order was in place. In addition, Shannon has ample time with the children in the visitation schedule, six out of every fourteen overnights, which is also a best-interests consideration. *See id.* Consequently, we affirm that portion of the court's order.

## IV. Child Support.

Shannon next argues the district court improperly ordered that he pay Jennifer $635 each month in child support. He asserts there was not enough evidence showing he earned $34,600 each year and therefore the child support was not calculated correctly. In the district court's remand order, the court stated:

> In 2015 S&S Construction purchased two apartment houses, one for $260,000 and another for $350,000. [Shannon] concealed from [Jennifer] these acquisitions and the income derived therefrom. The apartment houses have a relatively limited equity; however, they do generate substantial income, much of which [Shannon] denied at trial. [Shannon] testified that rent proceeds, most of which were cash, were deposited in an S&S account and placed in a safe. The three apartment houses owned by S&S Construction contained thirty-two apartments renting at an average of $500 per month. No accounting was made by [Shannon] as to the profits retained or otherwise generated by the apartment houses. In fact, [Shannon] at trial declined to state his present income. He stated that his sister-in-law was the bookkeeper and she did not get the profit and loss statements to him in time for trial. [Jennifer's] request for such information went unanswered. This failure to produce information necessary for establishing [Shannon's] income at the time of trial when such information was available requires the Court to attempt to determine such income from all three apartment houses based upon rents.
>
> [Shannon's] evasive testimony at trial reveals a conscious failure to produce evidence reflecting his actual income. This is not a case of imputed income but is rather a search for evidence of actual income. The failure of [Shannon] to cooperate with discovery attempts, which would most certainly aid the Court in making an accurate determination as to [Shannon's] income, results in the Court's decision to find that for child support purposes [Shannon's] income of $34,600 as proposed by [Jennifer] is fair and equitable.

Shannon contends he did provide the court with evidence to support what he claims should be his income for the child support calculation, including his prior tax returns that reflect his share of the company's profits for 2014 was

approximately $14,220, amounting to roughly $1600 per month take home pay. While the prior tax returns were provided, these tax returns reflected only the profit generated from one apartment building and did not reflect the income and profits generated, if any, from the two apartment buildings acquired after the parties separated but before the dissolution trial.

Shannon agreed that with thirty-two apartments available in the three buildings, the company could expect $170,000 to $192,000 in gross rental income during 2016. There was no other evidence provided as to the monthly debt obligation or other expenses associated with each of the apartment buildings or what income, if any, was generated from the construction side of the business. Thus, it was impossible for the court to determine a current monthly income figure for Shannon based on the evidence Shannon submitted. *See In re Marriage of Ales*, 592 N.W.2d 698, 703 (Iowa Ct. App. 1999) ("[A] person in possession of facts necessary to prove an issue . . . should have the burden of proving those facts."); 29 Am. Jur. 2d *Evidence* § 178 (2008) ("Where information necessary to prove an issue is peculiarly or exclusively within the possession of one party, courts sometimes reason that convenience and fairness justify placing the burdens of pleading and proving those facts upon that party."). We conclude it was reasonable for the court to accept Jennifer's estimation of Shannon's income at $34,600 per year, in the absence of other evidence to the contrary. *See In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991) ("The court must determine the parent's current monthly income from the most reliable evidence presented."). We affirm the court's calculation of Shannon's child support obligation.

**V. Property Distribution.**

Next, Shannon claims there was not enough specificity in the district court's decree with regard to the property distribution and how the equalization payment was calculated. We agreed and remanded the matter to the district court for a detailed explanation of the property distribution. The remand order entered by the district court specified the value assigned to the various property items owned by the parties and the debt associated with the items. When combined with the initial decision and the evidence submitted by the parties, we have now been able to determine the value of the martial estate and the district court's distribution.

In his supplemental brief following the court's remand order, Shannon takes issue with the court's statement that the value assigned to the marital home assumes a payment of $7500 from Shannon to Jennifer for repairs to the home and the assignment to Jennifer of the obligation for repayment of a $6809 grant that must be repaid if Jennifer moves from the residence "during the next two years." Jennifer notes in her supplemental brief that despite the language the district court used in the remand order regarding the $7500 for repairs of the home, there was no separate order from the court for Shannon to pay this amount to Jennifer, so we must assume this $7500 is part of the $40,000 equalization payment. We agree with Jennifer's interpretation of the remand order. In addition, district court noted the unlikelihood of the $6809 grant would ever need to be repaid, and the court never listed this amount as an obligation against the home awarded to Jennifer; thus, we do not consider the $6809 grant

to be an obligation assigned to Jennifer as part of the district court's property division.

Shannon also faults the district court for accepting the value Jennifer assigned to certain personal property items, such as a pool table, hot tub, stove, and grill, which were awarded to Shannon. Instead, Shannon asserts the court should have used the lower values Jennifer initially placed on the items in her pretrial affidavit. Because the pretrial affidavit was not admitted into evidence at trial and because Shannon offered no evidence as to the value of these items at trial, we find no error in the district court's assessment of their value. Relatedly, Shannon claims it was unclear whether the court's separate itemization "household goods and furnishings" included the pool table, hot tub, stove, and grill. We agree with Jennifer that by itemizing and valuing certain items like the pool table, hot tub, stove, and grill, and then separately valuing "household goods and furnishings," the court was not double counting the assets awarded to Shannon.

Shannon next asserts the values and debts assigned to his company were incorrect and misleading. We note some of the properties and assets of the company were valued in the district court's remand order in light of Shannon's one-half interest while other items were listed at the asset's full value. However, despite this confusion, this court, in consultation with the trial record, has been able to determine the value the district court assigned to each item and the item's debt obligation and calculate Shannon's interest in the item in light of his fifty percent ownership in the company. We agree with Shannon's assertion that the district court incorrectly listed the debt obligation associated with one of the

apartment properties owned by Shannon's company. With the trial record and Jennifer's concession in the supplemental brief, we conclude the district court made a scrivener's error for this particular item, and we have considered the correct debt obligation associated with this business asset in our evaluation of whether the property division was equitable.[1]

When a district court's valuation of the assets of a martial estate is within the range of permissible evidence, we refuse to disturb the district court's decision. *In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013). Upon our view of the record available to the district court and making appropriate adjustments to the value of the items detailed above, we conclude the $40,000 equalization payment is equitable in this case, and we affirm the district court's property distribution.

## VI. Attorney Fees.

Finally, both Shannon and Jennifer request the award of appellate attorney fees.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

---

[1] The district court listed the debt associated with one of the newly acquired apartment buildings at $40,000, but the record shows, and Jennifer concedes, Shannon's half of the debt was approximately $125,000 to $130,000. The fact the district court ordered a $40,000 equalization payment leads us to conclude the $40,000 figure for the debt was a scrivener's error because if the property in question only had $40,000 in debt a much higher equalization payment would have been in order.

*In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citations omitted). With these considerations in mind, we decline to award either party appellate attorney fees.

**AFFIRMED.**