# IN THE COURT OF APPEALS OF IOWA

No. 17-0963
Filed February 7, 2018


IN RE THE MARRIAGE OF RYAN WALKER
AND AMBER WALKER

**Upon the Petition of**
**RYAN WALKER,**
        Petitioner-Appellee,

**And Concerning**
**AMBER WALKER,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Story County, Timothy J. Finn, Judge.


        A divorced mother of two children appeals the district court's rejection of her proposal for joint physical care.  **AFFIRMED AS MODIFIED AND REMANDED**.


        Judith Jennings Hoover of Hoover Law Office, P.C., Cedar Rapids, for appellant.

        Ryan Walker, Ames, appellee pro se.


        Considered by Vogel, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

Both Amber and Ryan Walker testified at their divorce trial that they can communicate well when it comes to their two children, ages two and eight. But in the decree, the district court rejected Amber's request for joint physical care. She renews that request on appeal. After reviewing the record, we conclude joint physical care would be in the children's best interests and modify the decree accordingly.

Amber was eighteen years old and Ryan was nineteen years old when they married in 2008. The two settled in Ames where Ryan graduated from Iowa State University and Amber worked in retail. They have one son, J.W. born in 2008, and one daughter, M.W. born in 2015. Amber suffered postpartum depression after the birth of each child. After J.W.'s birth, Ryan discouraged Amber from taking medication for the depression, even flushing her prescription down the toilet. So when Amber again felt depressed after M.W. was born, Amber was reluctant to reveal her condition to Ryan. Despite her depression, Amber stayed home for several months after the birth of each child to provide primary care. Ryan worked full-time as a substance abuse counselor. Amber returned to work at Kay Jewelers in late 2015 to help the family make ends meet.[1]

The couple separated in June 2016. Amber hoped to stay at their Ames apartment until their lease expired, but she testified Ryan forced her to leave one week after she asked for a divorce.[2] Her housing arrangements did not allow for

---

[1] At the time of trial, Amber earned twelve dollars an hour as an assistant manager, for an annual salary of about $42,000. Ryan earned about $48,000 per year.
[2] Ryan testified he allowed her to stay for thirty days.

her to take the children with her. Ryan restricted her visitation with the children during the separation. Amber eventually moved into a coworker's two-bedroom apartment, which was close to Ryan's apartment and J.W.'s school. Ryan lived with his sister and, with her help, provided day-to-day care for the children.

Ryan filed a dissolution petition in July 2016. A temporary custody order placed physical care with Ryan and provided Amber with two overnight visitations every week. After trial in March 2017, the district court issued a decree in May 2017, granting the parents joint legal custody of the children, placing physical care with Ryan, and allowing Amber visitation on alternate weekends.

The only question before us is whether the district court should have honored Amber's request for joint physical care of M.W. and J.W.[3] Our review of the dissolution decree is de novo, which means we examine the entire factual record and adjudicate anew rights on the legal issues presented. *See In re Marriage of Ales,* 592 N.W.2d 698, 702 (Iowa Ct. App. 1999). While we independently decide Amber's claim, we give weight to the district court's factual findings, especially with respect to witness credibility. *See In re Marriage of Berning,* 745 N.W.2d 90, 92 (Iowa Ct. App. 2007).

Legal custody and physical care are distinct concepts. Legal custody bestows rights and responsibilities to decide matters such as the children's medical care, education, extracurricular activities, and religious instruction. Iowa Code § 598.1(3), (5) (2017); *see In re Marriage of Hansen,* 733 N.W.2d 683, 690 (Iowa 2007). By contrast, physical care involves the right and responsibility to maintain

---

[3] Only Amber filed a brief. After Ryan failed to respond, the supreme court ordered this appeal to proceed without his participation.

a home and provide routine care for children. Iowa Code § 598.1(7); *Hansen,* 733 N.W.2d at 690. An award of joint physical care requires divorced parents to work closely together to coordinate the myriad of everyday details of child rearing. That is why—when deciding if joint physical care is in the children's best interests—we must consider not only the continuity of caregiving, but also the ability of the divorced parents to communicate and show mutual respect; the degree of conflict between them; and the degree to which they are in general agreement about their approach to daily parenting matters.[4] *See Hansen,* 733 N.W.2d at 696–99.

After the district court awarded joint legal custody to Ryan and Amber, it was faced with Amber's request for joint physical care. When the court denies a parent's request for joint physical care, that denial "shall be accompanied by specific findings of fact and conclusions of law that the awarding of joint physical care is not in the best interest of the child[ren]." Iowa Code § 598.41(5)(a). The district court here listed several reasons why it believed Ryan, rather than Amber, deserved to be the children's primary caregiver. But the district court did not address why joint physical care would not serve the children's best interests.

After carefully scrutinizing the trial record and Amber's arguments on appeal, we conclude joint physical care would be in the children's best interests. Both Ryan and Amber are suitable parents, loving and conscientious. When we look at the continuity of caregiving, both parents have been primarily responsible

---

[4] In awarding physical care, we also consider the factors listed in Iowa Code section 598.41(3).

for the children's routine needs at different points in time. The district court placed heavy emphasis on their point of separation, asserting, "Ryan has been the primary caretaker for the children since their mother Amber left." But the district court failed to acknowledge Ryan forced Amber to leave, did not allow her to return to the apartment, and restricted her visitation with the children for weeks after she left. The court also overlooked the months after the birth of each child when Amber provided the bulk of their care. The approximation factor favors joint physical care.

We next assess whether the parents can communicate and show mutual respect, their degree of conflict, and whether they generally see eye to eye on their approach to daily parenting matters. *See Berning*, 745 N.W.2d at 94. Both Amber and Ryan agree they are able to set aside their differences for the benefit of J.W. and M.W. Ryan testified that "most of the time" he and Amber communicated well on topics involving the children and they did not experience much ongoing discord or anger. Amber testified she and Ryan lived "two minutes apart" and are "very flexible" in scheduling time with the children. The record did not reveal any major difference in their parenting methods. During the pendency of the temporary order, both children adapted well to spending two overnights per week with Amber.

Under the particular facts of this case, joint physical care emerges as the best arrangement for the children, allowing them maximum ongoing contact with both of their parents. Accordingly, we modify the decree to provide for joint physical care. The modification will not significantly disrupt the children's everyday routines given the close geographic proximity of their parents' residences and the parents' proven ability to work together to provide stability for the children. We

remand for the district court to establish a shared-care schedule and to recalculate any order of child support.

Finally, Amber asks for Ryan to pay her attorney fees incurred on appeal. In exercising our broad discretion on this question, we consider several factors: the financial needs of the party seeking the award, the other party's ability to pay, and the relative merits of the appeal. *In re Marriage of Okland,* 699 N.W.2d 260, 270 (Iowa 2005). Although Amber presented a meritorious issue, we do not find the relative financial needs of the parties require an award of attorney fees.

**AFFIRMED AS MODIFIED AND REMANDED**.