# IN THE COURT OF APPEALS OF IOWA

No. 17-1799
Filed January 9, 2019

**Upon the Petition of**
**LYNETTE ANNE HEIMS,**
        Petitioner-Appellant,

**And Concerning**
**BRAD FRANCIS HEIMS,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica Wittig,

Judge.


        A former spouse appeals from the district court's order terminating spousal

support and modifying child support obligations.  **AFFIRMED.**


        Jenny L. Weiss of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque,

for appellant.

        Taryn R. McCarthy of Clemens, Walters, Conlon Runde, & Hiatt, L.L.P.,

Dubuque, and Darin S. Harmon of Kintzinger, Harmon, Konrardy, PLC, Dubuque,

for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

Lynette Heims appeals from the district court's order terminating Brad Heims's spousal support obligation and modifying the child-support order from their 2014 Illinois dissolution of marriage decree. She argues a substantial change in circumstances has not occurred, continuing the spousal and child support orders is equitable, and the district court should have awarded her attorney fees. Both parties request appellate attorney fees. We agree with the court's termination of spousal support and modification of child support. We also find no decision on trial attorney fees to review, and we decline to award appellate attorney fees.

## I.     Background Facts and Proceedings

On September 15, 2001, the parties married in Iowa. Four children were born to the parties between 2001 and 2007. On February 13, 2014, the parties divorced in Illinois. At that time, the parties entered into a marital settlement agreement (MSA), which placed physical care of the children with Lynette, granted visitation to Brad, and required Brad to pay child support of $641.13 per week. The MSA also contained the following provision regarding "Maintenance (Alimony)":[1]

> [Lynette] shall receive the sum of $160.28 per week, as and for maintenance for a period of not less than three (3) years from the date of entry of this Marital Settlement Agreement. Said amount shall be incorporated into an Order for Support and a Notice of Withholding shall issue for said amount to [Brad's] employer. Maintenance may be reviewed by [Brad], upon proper notice and petition filed at least sixty (60) days prior to the three-year period herein, to determine if further maintenance is or is not warranted under the statutory factors contained in the Illinois Marriage and

---

[1] The parties, in their MSA and other filings and communications, refer to Brad's payments as "maintenance" or "alimony." Under Iowa Code section 598.21A (2016), an Iowa court may grant a "spousal support" order requiring one party to make support payments to the other. For simplicity, this opinion will refer to all of Brad's payments for Lynette's support as "spousal support."

Dissolution of Marriage Act then in force and effect, or any such similar statute in any state in which the parties may reside and in which the judgment for dissolution of marriage and this Agreement have been enrolled. Maintenance is calculated as the amount necessary, in combination with child support being received by [Lynette], to equal 50% of [Brad's] net annual income.

Under the MSA, Lynette received 57.5% of the total marital assets. Both parties eventually moved to Dubuque County, Iowa, and on August 21, 2015, the parties registered their dissolution of marriage decree, including the incorporated MSA, in Iowa. On December 12, 2016, Brad filed the petition to modify in Iowa, seeking to terminate his spousal support obligation. On July 27 and August 22, 2017, trial was held on Brad's petition. At the conclusion of the first day of trial, the court suggested the parties seek a modification of child support because the two support calculations are "totally intertwined." Brad then made such motion orally.

After earning her degree as a registered nurse in 1992, Lynette worked as a nurse until 2002 when she left the workforce to care for the parties' children. She then allowed her nursing license to become inactive. In March 2014, Lynette reactivated her license, which required completing certain education requirements. She then worked as a nurse, but she left the position after less than one year because she was not "up to date on things, and it—it was just very stressful, going back in there, not knowing any of that." For the next two years, she provided in-home assistance to elderly and disabled persons through an agency that paid her $7.50 per hour. Since 2016, she has provided in-home assistance to a private individual for about thirty hours per week at $10 per hour, and she has provided in-home assistance through another agency for about six hours per week at $20 per hour. She testified this schedule works well, allowing her to better care for the

parties' children. Her tax returns show her adjusted gross income was $19,212 in 2015 and $23,325 in 2016. As for housing, Lynette owns a home in Dubuque where she and the parties' four children reside. She purchased the home from her sister, who had assisted her during the divorce; Lynette agreed to pay her back for the home when her finances stabilized. She has borrowed additional money to fund this transaction. Lynette's paramour of four years often "stays overnight" in her home and helps with the parties' children, but Lynette testified "he doesn't live there."

Also at the time of trial, Brad lived in a home in Epworth with his paramour and her three children. He primarily works for a gas company in Chicago, Illinois, and he also has a hobby farm on his property, which generally operates at a loss. He testified he needs to work at least forty-five hours per week to pay all his obligations. His tax returns show his adjusted gross income was $122,822 in 2015 and $106,983 in 2016.[2]

On October 8, 2017, the district court issued its modification order. The court determined the spousal support was intended as rehabilitative to equalize the parties' incomes while Lynette returned to the workforce. The court concluded three years of spousal support was sufficient and terminated the support. The court also modified Brad's child support obligation to $2098.14 per month using the parties' 2016 incomes without spousal support under the Iowa guidelines. Lynette now appeals.

---

[2] The parties' adjusted gross incomes reflect about $8000 in alimony transferred annually from Brad to Lynette. Additionally, Brad claimed farm losses of $14,032 in 2015 and $25,533 in 2016.

## II.      Standard of Review

"We review an order modifying a decree for dissolution of marriage de novo." *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014); *see also* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Sisson*, 843 N.W.2d at 870 (quoting *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013)). "[W]e . . . will disturb the ruling only when there has been a failure to do equity." *Id.* (quoting *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005)).

## III.     Spousal Support

### A. Substantial Change of Circumstances.

"[C]ourts are permitted to 'modify child, spousal, or medical support orders when there is a substantial change in circumstances.'" *Id.* (quoting Iowa Code § 598.21C(1)). "All relevant factors are considered in determining a substantial change in the circumstances, including changes in employment, income, earning capacity, health, and medical expenses of a party." *Id.* (citing Iowa Code § 598.21C(1)).

Lynette argues there was no substantial change in circumstances warranting a modification of spousal support. She argues she has not been able to fully reenter nursing even though she has continuously held a nursing license, she has not remarried or received significant support from her paramour, and she still must pay for housing through an additional home loan.

Brad argues the changes since entry of the MSA in February 2014 are substantial. While Lynette has not fully reentered nursing, she has since

reactivated her nursing license and secured jobs that use her nursing background at least to some extent. He also asserts her paramour provides significant assistance and her home loan is a minimal financial burden. Significantly, Brad also notes the MSA permits him to seek review of the spousal support "upon proper notice and petition filed at least sixty (60) days prior to the three-year period."[3] The Illinois court incorporated the MSA into its judgment for dissolution. As such, the MSA "is interpreted and enforced as a final judgment of the court." *Prochelo v. Prochelo*, 346 N.W.2d 527, 530 (Iowa 1984). Thus, it "is to be construed like any other written instrument." *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987). "The determinative factor is the intention of the court as gathered from all parts of the judgment." *Id.* Illinois recognizes that a periodic general review of spousal support is distinct from a modification proceeding where the petitioner must show a substantial change in circumstances. *See Blum v. Koster*, 919 N.E.2d 333, 342 (Ill. 2009) ("The parties' marital settlement agreement here specifically provides for maintenance 'reviewable' after the 61-month period. In viewing the agreement as a whole, we find that the parties agreed to a general review of maintenance. Thus, [petitioner] did not have the burden of proving a substantial change in circumstances."). Considering this language in the MSA permitting a review and the changes described above, we agree the district court appropriately considered the issues for a modification of the support order.

---

[3] Lynette does not argue Brad failed to seek a review of spousal support in the time and manner provided in the MSA.

## B. Modification of support

In determining whether to modify a spousal support order, we consider the factors of Iowa Code section 598.21C(1). Ultimately, we examine "whether the recipient spouse has a continuing need for support." *In re Marriage of Ales*, 592 N.W.2d 698, 702 (Iowa 1999). In terminating the spousal support order, the court provided the following analysis:

> The Court finds that after three years of alimony being paid by [Brad], [Lynette] has done very little to secure a better earning capacity but uses her registered nurse status for only certain purposes. She is not working to the benefit of her children but is continuing to rely upon [Brad] as a source of income. Rehabilitative alimony in the State of Iowa is to assist in providing sufficient income during a reasonable period of time post the entry of a decree to allow for adjustment. It is obvious that once parties separate, life is never the same. Many corners need to be cut, and previous lifestyles need to be adjusted by both parties. The Court recognizes that it is a great deal of time and effort that one devotes to raising children, especially four. If the parties were able to work better together for the benefit of their children, a good deal of pressure could be relieved from [Lynette's] day-to-day obligations, which would better enable her to place herself in a full-time position. Because of the acrimony, she continues to assert that the children's needs require that she not work full-time. The Court finds this unreasonable in light of the obligations that this places on [Brad] to pick up all of the financial slack that is present as a result of her decisions. Additionally, she has help and assistance in her home from her paramour.

On our de novo review, we agree with the district court that under these facts, the spousal support order should be terminated.

## IV. Child Support

As with spousal support, Iowa courts may modify child support upon showing a substantial change in circumstances. *Sisson*, 843 N.W.2d at 870. For child support, a substantial change in circumstances exists if the amount due under the existing order varies by at least ten percent from the amount due under the

most current Iowa guidelines. Iowa Code § 598.21C(2)(a). The district court found a change in the amount of child support under the current Iowa guidelines of much more than ten percent. We agree. Therefore, a substantial change in circumstances warranting modification exists. *See id.*

Lynette does not challenge the amount of support calculated under the Iowa guidelines. Instead, she argues modification is inequitable because Brad's income has changed little since the dissolution. She also argues public policy favors retaining the initial child support calculation under Illinois law to prevent parents from selecting the most favorable forum for child support. Our legislature has already decided when an Iowa court may modify a child support order originally calculated in another state, and Lynette does not refute that legislation nor argue Iowa lacked jurisdiction to modify. *See* Iowa Code § 252K.615(1). Because both parties reside in Iowa, we find no inequity in applying Iowa child support guidelines to an Illinois dissolution decree, registered in Iowa.[4] Considering the large change in the amount of support due under the Iowa guidelines, we agree with the court's modification of the child support order.

## V. Attorney Fees

Lynette argues the district court should have awarded her attorney fees. "An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions." *In re Marriage of Miller*, 552 N.W.2d 460, 465 (Iowa Ct. App. 1996). The record on appeal contains no order regarding trial attorney fees. The court's modification order does not address attorney fees,

---

[4] Of note, both parties resided in Iowa before the original dissolution of marriage was finalized in Illinois in 2014.

nor was a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) filed requesting the modification court to enlarge its findings. We therefore have no decision to review for trial attorney fees.

Both parties also request appellate attorney fees. Appellate attorney fees are within the discretion of the appellate court. *In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App 2016) (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). We note Brad prevailed on all issues on appeal and he has a significantly higher income. Thus, we decline to award appellate attorney fees to either party.

## VI.    Conclusion

We agree with the district court's termination of the spousal support order and modification of the child support order. We have nothing to review for trial attorney fees, and we decline to award appellate attorney fees to either party.

**AFFIRMED.**