# IN THE SUPREME COURT OF IOWA

No. 107 / 04-1673

Filed January 5, 2007

**GORDON HARRINGTON**,

Appellant,

vs.

**UNIVERSITY OF NORTHERN IOWA**,

Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, Bruce B. Zager, Judge.

Retired employee sued former employer for breach of contract to continue health care coverage. **AFFIRMED.**

David J. Dutton and Carolyn A. Rafferty of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and George A. Carroll, Assistant Attorney General, for appellee.

**TERNUS, Chief Justice.**

Appellant, Gordon Harrington, appeals an adverse district court decision on his breach-of-contract claim against his former employer, appellee, University of Northern Iowa (UNI). The trial court rejected Harrington's claim that UNI was obligated to continue his health insurance as the primary coverage for professional medical services rendered to him notwithstanding Harrington's eligibility to enroll in Medicare Part B. We agree with the district court's conclusion that the contract did not provide for the payment of professional charges that would have been paid by Medicare Part B. Accordingly, we affirm.

I. *Standard of Review.*

Before we can state the relevant facts, we must resolve the parties' dispute with respect to whether our review is for correction of errors of law, as claimed by UNI, or de novo, as asserted by the plaintiff. This case was filed as a declaratory judgment action in which the plaintiff sought a declaration of his contractual rights, together with an award of monetary damages and injunctive relief. Harrington claims his request for injunctive relief means the case was heard in equity, and therefore, review is de novo. *See State ex rel. Miller v. Midwest Pork, L.C.*, 625 N.W.2d 694, 697 (Iowa 2001) ("A request for injunctive relief is an equity action, and therefore, our review is de novo.").

"We review declaratory judgment actions according to the manner [in which] the case was tried in the district court." *Owens v. Brownlie*, 610 N.W.2d 860, 865 (Iowa 2000). The case before us was tried at law. The matter was filed as a law action, the district court indicated on the record that the case would be heard at law, and the court ruled on the few objections that were made. *See Master Builders of Iowa, Inc. v. Polk County*, 653 N.W.2d 382, 387-88 (Iowa 2002) (considering pleadings and whether

court ruled on evidentiary objections at trial to determine whether case was tried in law or equity).

Harrington points out, however, that he requested injunctive relief, and that is an equitable remedy. But "[t]he fact that injunctive relief was sought is not dispositive of whether an action is at law or in equity, as an injunction may issue in any action." *Green v. Advance Homes, Inc.*, 293 N.W.2d 204, 208 (Iowa 1980). As this court recently noted, "An injunction may be obtained as an independent remedy by an action in equity, or as an auxiliary remedy in any action." *Lewis Invs., Inc. v. City of Iowa City*, 703 N.W.2d 180, 184 (Iowa 2005). Here, injunctive relief was sought as an auxiliary remedy for the defendant's alleged breach of contract. Thus, the existence of a request for an injunction does not alter our conclusion that this matter was tried as a law action.

Because this matter was tried at law, our review is for the correction of errors of law. Iowa R. App. P. 6.4. We are bound by the trial court's findings of fact if they are supported by substantial evidence. *See Home Builders Ass'n of Greater Des Moines v. City of West Des Moines*, 644 N.W.2d 339, 344 (Iowa 2002). Upon our review of the record, we conclude the following facts are supported by substantial evidence.

II. *Background Facts and Proceedings.*

Harrington retired as a UNI faculty member in 1991 at the age of sixty-six. The employee manual at that time allowed employees to "continue [health insurance] coverage following retirement," and Harrington elected to do so. (UNI is self-insured and contracts with Blue Cross Blue Shield, now Wellmark Blue Cross Blue Shield, to administer UNI's group health care plan.) In addition to the coverage provided by UNI, Harrington was automatically covered by a government program known as Medicare Part A, which covers certain hospital expenses.

Upon Harrington's decision to continue in the UNI health care plan, an application was sent to Blue Cross. A box on the application indicating the applicant had Medicare Part B, a government program that covers certain physician expenses, was not checked. Unlike Medicare Part A, for which coverage is generally automatic, one must enroll in Medicare Part B and pay a monthly premium to obtain coverage for professional medical services. Harrington had elected not to enroll in Medicare Part B, as he believed participation in Medicare Part B was not required by UNI's health care plan.[1]

At the time of Harrington's retirement, the booklet summarizing UNI's health care program stated there were no benefits available for

> [h]ospital and professional services to which you are entitled without charge, or to which you are entitled by any government law *even if you are not enrolled in such a plan.*

(Emphasis added.) The booklet also stated that "actual coverage is subject to the terms and conditions specified in your group's contract." The actual group contract, bearing a 1991 date, excluded coverage for

> [s]ervices or supplies for a Member covered under this Agreement to the extent that the member is entitled to have any part of the cost thereof paid by Medicare, *even though the member does not enroll in Medicare* or waives or fails to claim Medicare benefits.

---

[1]There was a factual dispute at trial with respect to what Harrington was told at the time of his retirement concerning the need to enroll in Medicare Part B to ensure full coverage of his medical expenses. We need not discuss or determine the content of any such conversations, however, because Harrington has not appealed the district court's dismissal of an equitable estoppel claim he asserted in his petition. For the same reason, we do not consider Harrington's argument that, even if UNI has correctly interpreted its health care plan, he should be reimbursed for the additional premium he must now pay for Medicare Part B due to his late enrollment. In the absence of a valid theory of recovery, the plaintiff is not entitled to an award of damages.

(Emphasis added.)[2]  This exclusion was intended to encourage employees eligible for Medicare coverage to use Medicare benefits as their primary insurance, rendering UNI's benefits supplementary coverage.  Even if a retired employee did not sign up for Medicare Part B, however, the benefits under UNI's plan were payable as though the retiree had.  Based on the assumption that eligible employees would be enrolled in Medicare Part B, employees over the age of sixty-five paid a lower premium for health care coverage than employees under age sixty-five.

Notwithstanding Harrington's failure to enroll in Medicare Part B, Blue Cross charged Harrington the lower premium.  In addition, for reasons not evident from the record, Blue Cross paid claims submitted by Harrington without applying the contractual exclusion for services covered by Medicare.  Nearly twelve years after Harrington retired, UNI realized that Harrington had not signed up for Medicare Part B, and it informed him that he must do so or face reduced coverage under UNI's health care plan.  Although Harrington disagreed with UNI's position, he signed up for Medicare Part B.  His enrollment so long after his initial eligibility required him to pay a much higher premium for Medicare Part B benefits.

On December 4, 2003, Harrington filed this lawsuit against UNI, requesting a declaratory judgment construing the contract.  After trial to the court, the district court rendered judgment in favor of UNI.  It found that UNI and Blue Cross had "the mistaken belief that [Harrington] was enrolled in both Medicare Part A and Medicare Part B."[3]  When this mistake was

---

[2]Harrington challenged for the first time in his reply brief the authenticity of the 1991 contract introduced at trial.  We give this untimely challenge no consideration.  *See Goodell v. Humboldt County*, 575 N.W.2d 486, 493 n.8 (Iowa 1998) (holding issue raised for first time in reply brief will not be considered by the supreme court).

[3]This factual finding is supported by evidence that UNI has 200 other retirees who elected to continue coverage and every one of them has enrolled in Medicare Part B.  Under these circumstances, it is not surprising that UNI and Blue Cross just assumed Harrington had Part B coverage, notwithstanding the absence of any documentation of such coverage.

discovered, the court concluded, Harrington was advised UNI was "now going to implement the policies set forth in the insurance contract whereby if he had not signed up for Medicare Part B, Wellmark would estimate what Medicare Part B would pay and would then only pay the balance."

Harrington has appealed. He argues the trial court has erred in its interpretation of the plan exclusion for Medicare-covered expenses. Harrington contends this exclusion only applies when the insured has an existing right to have his medical expenses paid by Medicare Part B. Harrington also claims the provision in the employee manual quoted above constituted a promise that UNI would continue health insurance coverage upon an employee's retirement on substantially the same basis coverage was extended during the retiree's employment—as primary coverage. He asserts Iowa Code chapter 509A (1991) lends support to his argument that coverage was offered to retired employees under the same terms and conditions as working employees.[4]

III. *Applicability of Exclusion for Benefits Covered by Medicare.*

To support his claim that the Medicare exclusion does not apply to him, Harrington relies on a provision in a "Benefits Certificate" that sets forth the comprehensive major medical coverage provided by UNI.[5] In the section listing, "services not covered," the certificate states: "You are not

[4]On the final page of his reply-brief argument, Harrington argues that UNI's health plan violates the ADEA, if interpreted as UNI contends. Based on Harrington's failure to cite authority for his contention, we consider this argument waived. *See Goodell*, 575 N.W.2d at 493 n.8; *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 689 (Iowa 1994) (holding random mention of issue, without elaboration or supporting authority, is insufficient to raise issue for supreme court's consideration); Iowa R. App. P. 6.14(1)(*c*) (same).

[5]The benefits certificate upon which Harrington relies bears a print date of 2003. Although not entirely clear, it appears this certificate is a later, plain-language version of the 1991 contract. Harrington testified it was one of a number of certificates issued to him after his retirement. Because the relevancy of this document has not been questioned on appeal, we proceed to address Harrington's argument grounded on this certificate.

covered for services or supplies when you are *entitled* to claim benefits from governmental programs (except Medicaid)." (Emphasis added.) Harrington argues this statement shows UNI intended only to exclude benefits if the retiree had a present right to Medicare benefits. In other words, if the retired employee had not enrolled in Medicare Part B, Harrington reasons, he would not be "entitled to claim benefits" from that governmental program within the meaning of the certificate provision.

In searching for the meaning of contractual terms, we often resort to the dictionary to ascertain a term's common meaning. *See Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Farmland Mut. Ins. Co.,* 568 N.W.2d 815, 818 (Iowa 1997) (stating court consults dictionary for ordinary meaning of term); *Fed. Land Bank of Omaha v. Bollin,* 408 N.W.2d 56, 60 (Iowa 1987) (stating we interpret "the language of the contract in accordance with its plain and ordinary meaning"). The dictionary defines the word "entitle" as "[a] right or legal title to : to qualify (one) for something : furnish with proper grounds for seeking or claiming something." *Webster's Third New International Dictionary* 758 (unabr. ed. 2002). This definition would permit two interpretations of the word "entitle" as used in the benefits certificate: (1) having a right to Medicare benefits, or (2) being qualified or having the proper grounds to seek or claim Medicare benefits. When the word "entitled" is considered in the context of the entire benefits certificate, we think the latter meaning was clearly intended.

Under a provision entitled "Medicare eligibility," the certificate provides: "If you are age 65 or older and no longer an employee, your *eligibility* for Medicare may terminate your . . . coverage under this certificate." (Emphasis added.) The reader is then referred to the "coordination with Medicare" section of the benefits certificate, which states that under federal law, Medicare is the secondary payer and group health

plans are the primary payer in a variety of situations, none of which would encompass Harrington's circumstances. These provisions are consistent with an interpretation of the plan as excluding coverage for services that could be covered by Medicare, thereby making Medicare the primary coverage and the UNI plan secondary. Accordingly, we think the district court correctly determined that, once a retired employee is *eligible* for Medicare Part B, the retiree is "entitled to claim benefits" from that program, within the meaning of the contract exclusion. At that point, the UNI plan provides supplementary coverage.

Further support for this interpretation of the plan is found in the booklet given to employees in which the terms of the plan are summarized. That document excludes medical services "to which [the insured is] *entitled* by any government law *even if [the insured is] not enrolled in such a plan.*" (Emphasis added.) This provision clearly indicates that the word "entitled" is used in the broad sense of being eligible for Medicare Part B benefits. The trial court correctly interpreted the Medicare exclusion as applying to Harrington because he was eligible for Medicare and therefore entitled to such benefits, even though he had not enrolled in Medicare Part B.

IV. *Continuation of UNI Plan as Primary Coverage.*

Harrington argues that, notwithstanding the terms of UNI's health plan, he had an enforceable agreement with UNI that its plan would continue as his primary coverage. He bases this argument on the statement in the employee manual that a "staff member may continue such [group health] coverages following retirement." Harrington claims his election to continue in UNI's health plan created a binding contract that the UNI health care plan would continue to provide primary coverage for his medical expenses. *See Heartland Express, Inc. v. Terry,* 631 N.W.2d 260, 270 (Iowa 2001) (noting an acceptance of an offer constitutes a contract).

We agree with the trial court that the offer made in the employee manual allowed a retired employee to continue coverage under the UNI plan *subject to the terms and conditions of the contract setting forth that coverage.* As we have discussed, the contract obligated UNI to pay professional expenses only to the extent they were not covered by Medicare Part B, even if the retiree had not elected to enroll in Medicare Part B. Consequently, the district court correctly concluded UNI did not break its promise to continue Harrington's health care coverage under the UNI plan upon his retirement.

Harrington also argues the continuation of his UNI insurance as primary coverage is required by Iowa Code chapter 509A. Chapter 509A addresses group insurance for public employees. Harrington relies specifically on the statutory definition of employee, which by its own terms "does not include . . . retired employees." Iowa Code § 509A.7. This definitional provision includes the following statement: "However, this section does not prevent a retired employee sixty-five years of age or older from voluntarily continuing in force, at the employee's own expense, an existing contract." *Id.* This provision does not advance Harrington's position because it imposes no duty on an employer to continue an existing contract for retired employees. Section 509A.7 simply clarifies that the statute—which addresses only the rights of active employees—should not be construed to preclude the continuation of coverage for retired employees sixty-five years of age or older, a matter not addressed in chapter 509A.

In a related argument, Harrington contends section 509A.7 should be interpreted consistently with section 509A.13, a statute addressing the rights of employees who retire *before* the age of sixty-five. The latter statute provides:

> If a governing body . . . has procured for its employees . . . health . . . insurance . . ., the governing body . . . shall allow its employees *who retired before attaining sixty-five years of age* to

continue participation in the group plan or under the group contract at the employee's own expense *until the employee attains sixty-five years of age.*

*Id.* § 509A.13 (emphasis added). The attorney general has issued an opinion that interprets the statutory language "to continue" to mean that participation in the group plan "will 'remain unchanged.' " Op. Iowa Att'y Gen. No. 02-5-2 (May 14, 2002) 2002 WL 1617558 (citation omitted).[6] Harrington argues the provision in section 509A.7 allowing "a retired employee sixty-five years of age or older" to "voluntarily continu[e] in force" an existing contract of insurance should be similarly interpreted to mean the contract would continue to provide coverage that is substantially the same as the coverage provided prior to retirement. But as we have already pointed out, section 509A.7 imposes no duty on an employer to continue coverage for retired employees, much less substantially the same coverage.

Nor do we think the attorney general's opinion interpreting section 509A.13 is persuasive with respect to the meaning of UNI's statement in its employee manual that employees could "continue" health coverage upon retirement. As we have previously stated, the promise to continue coverage offered no more than the coverage provided by the plan, which at all times excluded liability for medical expenses covered by Medicare. *See Koenigs v. Mitchell County Bd. of Supervisors,* 659 N.W.2d 589, 594 (Iowa 2003) (stating a contractual term is interpreted in "the context of the agreement as a whole"). It would make no sense for UNI to promise in its employee manual coverage that was not provided by its health care plan. We will not place such a nonsensical meaning on the offer made in the employee manual. *See Modern Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc.,* 581 N.W.2d 616, 625 (Iowa 1998) (interpreting contractual obligation to

---

[6]This appeal does not require us to determine whether the attorney general's opinion correctly interprets section 509A.13. We merely assume for purposes of our discussion here that it does.

indemnify consistently with contractual duty to maintain insurance), *overruled in part on other grounds by Wesley Ret. Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 29 (Iowa 1999).

Our conclusion is not altered by a provision in the benefits certificate cited by Harrington, which provides:

> Continuation of Group Coverage.
>
> Iowa Code Sections 509A.7 and 509A.13 may apply to you if you are an employee of the State, a school district in Iowa, or any other entity supported by public funds. *This law entitles you to continue participation in this health care plan when you retire.*

(Emphasis added.) As we have already pointed out, the Code provisions mentioned in this provision do not apply to Harrington because he retired after the age of sixty-five. More importantly, this paragraph in the benefits certificate should, if possible, be construed consistently with other provisions found in this document. We have previously discussed the other provisions of the contract that indicate Medicare-eligible retired employees receive only supplementary coverage under the UNI plan. The continuation-of-group-coverage provision, which does not apply to this category of insureds, requires no different result.

Harrington's final argument again focuses on a provision in the 2003 benefits certificate. In the "coverage eligibility" section, employees are advised that retired employees over the age of sixty-five whose coverage under the plan terminates due to their "eligibility for Medicare" may be eligible to convert to a Medicare supplement plan. Harrington argues this conversion provision would be rendered superfluous under UNI's interpretation of the plan because UNI claims the coverage automatically converts to secondary coverage once a retiree becomes eligible for Medicare. We think the 2003 benefits certificate is simply stating in another manner what was evident in the 1991 contract: UNI will not pay for services for

which the retired employee could obtain coverage under Medicare. While the 1991 contract did not refer to coverage becoming supplementary at that point, that is precisely what would happen once the exclusion was triggered. Therefore, we think the 2003 benefits certificate merely confirms the trial court's interpretation of the 1991 contract.

V. *Summary.*

We review this law action for correction of errors of law. The trial court's factual findings are supported by substantial evidence. In addition, the trial court did not err in concluding UNI offered to continue Harrington in its health care plan, subject to the terms and conditions of that plan. The trial court correctly interpreted that plan as providing only secondary coverage to a retiree who is eligible for Medicare Part B coverage, even though the retiree has not enrolled in Medicare Part B. UNI did not breach its contract with Harrington by refusing to pay for medical expenses that were payable under Medicare Part B. We therefore affirm the trial court's judgment dismissing Harrington's breach-of-contract claim.

**AFFIRMED.**

All justices concur except Hecht and Appel, JJ., who take no part.