# IN THE COURT OF APPEALS OF IOWA

No. 16-1444
Filed March 7, 2018

**WELDON D. BLOOM and KAREN WICKWIRE, as Co-Trustees of the WELDON D. BLOOM REVOCABLE TRUST,**
 Plaintiffs-Appellees/Cross-Appellants,

**vs.**

**MICHAEL ONIAYEKAN and IJEOMA ASOTA,**
 Defendants-Appellants/Cross-Appellees.
_____

 Appeal from the Iowa District Court for Scott County, Stuart P. Werling, Judge.

 Oniayekan appeals the district court's ruling in favor of Bloom in this breach of contract action. Bloom cross-appeals. **AFFIRMED ON BOTH APPEALS AND REMANDED.**

 William R. Stengel of Stengel, Bailey & Robertson, Rock Island, Illinois, for appellants.

 Katherine Varlas Teel of Pepping, Balk & Kincaid, Ltd., Silvis, Illinois, for appellees.

 Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

Buyers of a home terminated the real estate purchase contract. The sellers sued and obtained judgment against them. On appeal, the buyers contend a mutual mistake of fact precluded formation of the contract. The sellers cross-appeal for additional damages and attorney fees.

## I. Background Facts and Proceedings

Plaintiffs Weldon Bloom and Karen Wickwire owned a home in Davenport, Iowa. Defendants Ijeoma Asota and Michael Oniayekan made an offer to purchase the property, which was accepted. A purchase agreement was executed in late August 2014.

At the same time, Bloom completed a seller's disclosure statement. He left blank the question, "Any easements or encroachments onto or from neighboring properties?" He later amended the disclosure statement to answer "No" to the question.

In late September 2014, the City Public Works Department's real estate manager sent Bloom a certified letter requesting a meeting to discuss a permanent recreational trail easement and a temporary construction easement. Bloom picked up the letter on October 4, 2014. Shortly thereafter, he forwarded it to the listing agent who, in turn, sent it to the buyers' agent.

On October 15, 2014, the buyers' agent informed the listing agent that the buyers were terminating the contract. The reason given on the termination document was: "Due to the city of Davenport taking part of the land. The purchasers intended to use the backyard for their small child to play safely." The

City never took title to the land and did not record the easements until approximately one year after the buyers terminated the contract.

The buyers failed to appear on the scheduled closing date in November 2014. Several months later, the sellers sold the property to another purchaser.

Bloom and Wickwire sued Oniayekan and Asota for breach of contract. Following trial, the district court entered judgment in favor of Bloom and Wickwire. The buyers appealed, and the sellers cross-appealed.

## II.    Buyers' Appeal – Mutual Mistake

Oniayekan and Asota contend they "did not complete the purchase [agreement] as they did not know at the time of signing the purchase agreement" that the property was "subject to temporary and permanent easements." They concede Bloom and Wickwire also were unaware of the easements. In their view, "This mutual lack of knowledge of a material issue leads to avoidance of the contract based on mutual mistake."

### A.    Error Preservation

Bloom and Wickwire preliminarily contend the buyers failed to preserve error because they did not raise the defense of mutual mistake in their answer or amended answer. "Failure to plead an affirmative defense normally results in waiver of the defense, unless the issue is tried with the consent of the parties." *Dutcher v. Randall Foods*, 546 N.W.2d 889, 893 (Iowa 1996). The buyers did not plead the defense, but the mutual mistake issue was tried by consent. Specifically, both sides raised the issue at trial and both sides presented written argument addressing the issue. The sellers concede "the district court ruled on [the]

affirmative defense, despite the fact that it was not properly pled." The issue was preserved for review.

### B. Scope of Review

The buyers assert our review of this "specific performance contract breach" is de novo. We disagree.

The sellers did not request specific performance. They styled their action a "petition at law," pled an at-law breach-of-contract cause of action, and sought a money judgment against the buyers. They made a jury demand.[1] A trial scheduling and discovery plan document listed the action as a law action. At trial, the court ruled on objections. All these circumstances are hallmarks of a law action rather than an equity action. *See Westco Agronomy Co., LLC v. Wollesen*, ___ N.W.2d ___, ___, 2017 WL 6545853, at *11 (Iowa 2017) ("[L]aw issues are for the jury and equity issues are for the court."); *Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 365 (Iowa 2007) (noting case was filed as a law action and tried at law and the court ruled on the objections, making appellate review for correction of errors at law); *Bacon ex rel. Bacon v. Bacon*, 567 N.W.2d 414, 417 (Iowa 1997) (same); *Harding v. Willie*, 458 N.W.2d 612, 613 (Iowa Ct. App. 1990) ("The essential character of a cause of action and the relief it seeks, as shown by the complaint, determine whether an action is at law or equity.").

We recognize "[a] mistake of fact is one of the fundamental grounds of equitable relief." *Harding*, 458 N.W.2d at 614; *see also Gouge v. McNamara*, 586 N.W.2d 710, 713 (Iowa Ct. App. 1998) ("[C]ourts of equity have jurisdiction to

---

[1] They later withdrew the demand, without comment.

relieve parties against the consequences of mutual mistake of fact, and to grant reformation in case of such a mistake.").  But a request for this equitable remedy does not alter our conclusion that the action was at law, where the case was filed and tried at law.  *Harrington*, 726 N.W.2d at 365.  Our review is for errors of law.

### C.     Mistake of Fact

"A mistake is a belief that is not in accord with the facts."  *Nichols v. City of Evansdale*, 687 N.W.2d 562, 570 (Iowa 2004) (quoting Restatement (Second) of Contracts § 151 (1981)).  "Mistakes in the formation of contracts include mistakes in an underlying assumption concerning matters relevant to the decision to enter into a contract."  *Id.* (quoting *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 151 (Iowa 2001)).

At the time of the contract, none of the parties could have made a mistake about the easements because the easements were not in existence.  The parties entered into the real estate purchase contract on August 30, 2014.  Notice about the easements was sent to Bloom on September 30, 2014.  According to the City's real estate manager, the easements had not been finalized as of that date or even at the time of the scheduled closing six weeks later.  They were simply proposed easements.  As noted, the proposed easements were finalized and recorded close to a year after the buyers terminated the contract.  Contrary to the buyers' statement in their termination notice, the real estate manager testified, "There was no fee title property involved" in the permanent easement.  The easement simply provided that "no permanent structure be placed on that easement, that no trees

or bushes be placed on that easement, that it would remain as open space."[2] He also testified the temporary easement was unnecessary. Because the easements did not exist at the time of the land-sale contract, they could not have been "an underlying assumption" for the decision to enter into the contract. *See id.; cf. Dover Pool & Racquet Club, Inc. v. Brooking,* 322 N.E.2d. 168, 169 170-71 (Mass. 1975) (noting buyer intended to use the property for a nonprofit tennis and swim club and a proposed amendment to the zoning by-law, while not yet frustrating the purchaser's principal purpose, altered the basic assumption that the by-laws "interposed no obstacle to the use of the premises for a nonprofit tennis and swim club").

We reach this conclusion notwithstanding evidence that planning for the easements began well before the contract date or scheduled closing date and notice of an environmental assessment on the project was published shortly before the contract date. The proposed easements were part of the City's five-year plan for the area which, according to the evidence, may or may not have come into fruition as proposed. Although the notices of environmental assessment could have placed members of the public on notice of a possible easement they did nothing to create an actual easement on their properties. As Wickwire testified, "We didn't have any information about an easement. We didn't know about any easement or any proposed easement."

Nor does Bloom's failure to answer the easement question on his initial disclosure form alter our conclusion. When Bloom completed the initial disclosure

---

[2] The proposed easement fell "about a half inch left of" a telephone pole covered by an existing utility easement about which the buyers had no complaints.

form, he lacked knowledge of the proposed easements on the property. After he learned of them and learned they were only proposed, he amended his disclosure statement to answer "No."

The district court did not err in rejecting the buyers' defense of mutual mistake.

### III. Cross-Appeal – Damages and Attorney Fees

#### A. Consequential Damages

"Two types of damages may be awarded in breach of contract actions, general damages and special or consequential damages." *Macal v. Stinson*, 468 N.W.2d 34, 35-36 (Iowa 1991). "In real estate contract actions, general damages are measured by the difference between the contract price and the fair market value of the real estate on the date of the breach." *Id.* at 35. Consequential damages are recoverable if they arise naturally from the breach or if they are foreseeable. *Id.* at 36.

On cross-appeal, Bloom and Wickwire contend the district court erred in failing to award them $895 in consequential damages, representing the cost of repairs requested by the new purchasers of their home, as well as $200 for cleaning before the new purchasers moved in. We find this argument unpersuasive.

The district court awarded consequential damages arising from the delay in the home sale. The delay was indisputably occasioned by the buyers' termination of the contract. In contrast, the $895 and $200 expenses were tied to the new buyers. These expenses were too attenuated from the original buyers' breach to

be compensable.[3]  Because the expenses were neither natural consequences of the buyers' breach nor reasonably foreseeable, we conclude the district court did not err in declining to include them in the damage award.  *See Hubbell Homes, L.C. v. Key*, No. 09-0925, 2010 WL 2077173, at *5 (Iowa Ct. App. May 26, 2010) (finding no evidence landscaping and realtor commission costs were connected to the breach but finding utility payments should be borne by the breaching party).

### B. Attorney Fees

The real-estate contract called for the payment of "reasonable attorney fees and expenses incurred by reason of the default."  *See* Iowa Code § 625.22 (2015) (allowing courts to award "a reasonable attorney fee" when "judgment is recovered upon a written contract containing an agreement to pay an attorney fee").  At trial, the sellers requested $15,146.62.  Following trial, they attached an updated statement requesting $20,155.62 in attorney fees and costs.  The district court ruling listed the lower amount and awarded $8000.  The sellers moved for enlarged findings and conclusions, pointing to their amended request for $19,307.50 in attorney fees.  The district court denied the motion.  On appeal, Bloom and Wickwire contend, "The district court's award of fees was substantially low in light of [their] claim."

The district court is the expert on the issue of reasonable attorney fees.  *See Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 897 (Iowa 1990).  We will reverse an award only when the court abuses its discretion.  *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 469 (Iowa 2010).  "A court abuses its

---

[3] We also find scant, if any, evidence to support the cleaning expense.

discretion when it fails to exercise any discretion." *GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 733 (Iowa 2005) (quoting *State v. Hager*, 630 N.W.2d 828, 836 (Iowa 2001)).

The district court exercised its discretion to reduce the award. Although the court did not articulate reasons for the reduction, we have reviewed the fee statement, transcript, and record and discern no abuse of discretion in the award. *See Beckman v. Kitchen*, 599 N.W.2d 699, 702 (Iowa 1999) (noting factors pertinent to the award include the time expended, the nature of the services rendered, the amount in controversy, the relative difficulty and importance of the issues, and the results obtained).

The sellers request $15,000 in appellate attorney fees. We remand to the district court for an evidentiary hearing to fix appellate attorney fees. *See Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 278-79 (Iowa 1982).

**AFFIRMED ON BOTH APPEALS AND REMANDED.**