# IN THE COURT OF APPEALS OF IOWA

No. 21-1088
Filed August 31, 2022

IN RE THE MARRIAGE OF STEVEN MICHAEL GUST
AND LINDA LEANN GUST

Upon the Petition of
STEVEN MICHAEL GUST,
      Petitioner-Appellee,

And Concerning
LINDA LEANN GUST,
      Respondent-Appellant.
_____

      Appeal from the Iowa District Court for Polk County, Jeffrey Farrell, Judge.


      A former spouse appeals the district court decision that modified the amount and duration of alimony to be paid by her ex-husband. **AFFIRMED AS MODIFIED**.


      Michael B. Oliver of Oliver Law Firm, P.C., West Des Moines, for appellant.

      Robb D. Goedicke of Neighborhood Law Group of Iowa, West Des Moines, for appellee.


      Considered by Schumacher, P.J., Ahlers, J., and Mullins, S.J.*

      *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**SCHUMACHER, Presiding Judge.**

Linda Gust appeals the district court decision modifying the amount and duration of alimony to be paid by her ex-husband, Steven Gust. She contends the modification is inequitable. Linda also requests an award of appellate attorney fees. We affirm the court's modification of spousal support from $2000 a month to $500 a month but modify the court's decision to terminate the spousal support when Linda turns sixty-two. We extend the payment of the reduced amount to the date Linda turns sixty-seven years old, her death or remarriage, or Steven's death, whichever occurs first. We decline to award appellate attorney fees.

**I.     Background Facts & Proceedings**

We turn the page to chapter two of the parties' 2012 dissolution of marriage. Following an appeal of the original divorce decree, our supreme court required Steven to pay Linda $2000 a month in permanent spousal support. *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015). The court expressly reserved the impact of Steven's retirement, if and when it occurred, for a separate modification action. *Id.* at 418. The instant appeal arises following the anticipated modification action.

Steven, sixty-seven years old at the time of the modification trial, filed an application to modify the spousal-support award in November 2019. He was laid off from work a year later. He applied for and received full social security benefits, as well as unemployment benefits. Steven testified that while he only stopped working because he was laid off, he has no intention of returning to work. He considers himself retired. He relies on social security benefits, funds from his retirement account, and temporary unemployment benefits. His retirement

account is currently valued at approximately $260,000. He lives with his wife and splits the mortgage and other expenses with her. Steven's monthly income is $3700.00. He reports monthly expenses of $3900.

Linda, who was fifty-nine at the time of trial, works as a "ten-month" secretary for the Ankeny school district. The "ten-month" portion of her job title refers to the fact that she is an hourly employee who only works during the school year. She makes between $28,000 and $29,000 a year. She does not work during the school's summer break and does not get paid for twelve weeks a year. For the past four years she has lived with her boyfriend. Linda testified that she splits the rent for an apartment and some expenses with her boyfriend. Linda's monthly expenses listed on her financial affidavit are $3462.40. She added that she lives frugally, at a standard of living below what she enjoyed during her marriage to Steven. She will obtain IPERS benefits[1] upon retirement and has some retirement savings.[2] She will also be eligible to draw social security benefits; the amount and date of eligibility was contested at trial.

Following trial in May 2021, the court held the record open for additional evidence related to social security benefits. The court reduced Linda's spousal support from $2000 monthly to $500 a month until she turns sixty-two, at which time Steven's alimony obligation would terminate. Linda appeals.

---

[1] IPERS stands for Iowa Public Employees' Retirement System, *see* Iowa Code § 97B.1 (2019), and it provides for a "monthly retirement allowance" for vested members upon their retirement. *See* Iowa Code § 97B.49A(2).

[2] Linda's retirement fund separate from IPERS is a result of a Qualified Domestic Relations Order following the parties' dissolution of marriage.

## II.    Standard of Review

We review a modification of a dissolution decree de novo.  *In re Marriage of Ales*, 592 N.W.2d 698, 701-02 (Iowa Ct. App. 1999) (en banc).  "We give weight to the fact findings of the district court, especially in determining the credibility of witnesses, but we are not bound by them."  *Id.* at 702.

## III.    Modification of Spousal-Support Award

Linda contests the district court's modification as to the amount and duration of the spousal support she receives from Steven.  In particular, she argues the award is inequitable because Steven retains his ability to pay spousal support and she has an ongoing need for support.  She also points to an alleged error in the court's calculation of the social security benefits available when she turns sixty-two.  Linda requests that the previous award of permanent alimony of $2000 per month be reinstated.

"Provisions for the payment of support in a decree of marriage are normally final as to the circumstances existing at the time.  Yet, courts are permitted to 'modify child, spousal, or medical support when there is a substantial change in circumstances.'"  *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014) (internal citation omitted) (quoting Iowa Code § 598.21C(1)).  We look to the factors in Iowa Code section 598.21C(1) to determine whether there has been a substantial change in circumstances.[3]  Such change "must be material and

---

[3] Linda contends the district court erroneously applied the factors from section 598.21A, which outlines factors to be considered during a dissolution rather than a modification.  It is true the district court cited the wrong statute.  However, that citation does not warrant reversal.  First, the court correctly cited *In re Marriage of Maher*, 596 N.W.2d 561, 564-65 (Iowa 1999) when explaining the relevant law surrounding substantial changes in circumstances.  The court premised its

substantial, essentially permanent, and not within the contemplation of the court at the time of the decree." *Id.* at 870-71. The party asserting a change in circumstances bears the burden of proving such a change by a preponderance of the evidence. *Ales*, 592 N.W.2d at 702.

Linda contends that Steven's earning capacity is not altered by his retirement. Our supreme court has noted that voluntary reductions in income "do not normally justify a change in circumstances to support a modification of spousal support." *Sisson*, 843 N.W.2d at 872 (citing *Ellis v. Ellis*, 262 N.W.2d 265, 267-68 (Iowa 1978)). But the next year the court explained at length the state of our case law, noting authority that supported both sides of this issue. *See Gust*, 858 N.W.2d at 414. Ultimately, in deferring on the issue of Steven's future retirement and its impact on spousal support, the court found, "We think the best course in this case is to follow *In re Marriage of Michael* [839 N.W.2d 639 (Iowa 2013)]." *Id.* at 416. That case held that whether the payor spouse's obligation should terminate at his retirement "will depend on the circumstances of the parties prevailing at that time." *Michael*, 839 N.W.2d at 639 n.8.

Thus, depending on the circumstances of the case, retirement may be a substantial change in circumstances sufficient to warrant modification. Implicit in those cases' reasoning is that retirement changes the position of the payor spouse

---

modification on Steven's reduced income due to his retirement and Linda's capacity to earn sufficient income through social security benefits, factors which are relevant under section 598.21C(1)(a). Thus, the court considered appropriate factors despite the erroneous citation. Finally, Linda only suggests the court's use of the wrong statute warrants reversal in her reply brief. An issue raised for the first time in a reply brief is untimely. *See Harrington v. Univ. of N. Iowa*, 726 N.W.2d 363, 366 n.2 (Iowa 2007).

by virtue of their reduced income. Steven's income has been reduced by his retirement. The district court appropriately found Steven's monthly income drawn exclusively from social security benefits and retirement accounts to be roughly $3700.[4]

Steven asserts Linda's cohabitation with her boyfriend reduces her need for spousal support. While not expressly included in the factors found in section 598.21C, we have recognized changes in nonmarital cohabitation as a relevant factor in modifications. *See Ales*, 592 N.W.2d at 703. When considering cohabitation's effect on modifications, we use a two-step process. First, "the petitioner in a modification action [is] required to show there is a cohabitation to meet the substantial change of circumstances requirement" of section 598.21C(1). *Id.* "Then, the burden will shift to the recipient to show why spousal support should continue in spite of the cohabitation because of an ongoing need, or because the original purpose for the support award makes it unmodifiable." *Id.*

Steven has met his burden of establishing Linda is cohabitating with her boyfriend. However, Linda has met her burden of establishing a continued need for support. We find this case to be much like *Ales*. In that case, the divorced spouse's partner minimally contributed to shared expenses. *Id.* at 703. Instead, their contribution was "just enough to cover the cost of his presence in the home." *Id.* Similarly, Linda testified that her boyfriend contributes a small amount of money for food and pays part of the rent. They do not have joint assets. Based the record

---

[4] We note that Linda's decision not to work during the school district's summer break voluntarily reduces her income, resulting in an earning capacity somewhat higher than the $28,000 the district court found.

before us, Linda's cohabitation does not alone support a modification to the spousal support.

Linda points to her recent battle with breast cancer and the risk it will return as a reason for continued support. *See* Iowa Code § 598.21C(1)(c). However, she testified that she considers herself cancer free. Given the speculative nature of any potential risk of the cancer returning, we will not consider it a factor supporting continued spousal support.

Steven contends the current award requires him to draw from his retirement accounts, effectively dividing marital property already divided in the dissolution decree. *See In re Marriage of Huffman*, 453 N.W.2d 246, 248 (Iowa Ct. App. 1990) ("As division of [retirement] benefits is regarded as the division of marital property, they do not constitute a resource from which alimony may be derived in this case" (internal citation omitted)). A similar argument was made in another case, *In re Marriage of Griffith*. No. 12-0801, 2013 WL 1452930, at *3-4 (Iowa Ct. App. Apr. 10, 2013). In that case, this court held,"We have not treated *Huffman* as barring consideration of [retirement] benefits when determining spousal support." *Id.* at *4. We agree. Thus, the fact that Steven will need to draw on retirement funds does not preclude continued spousal support.

Based on Steven's change in income upon his retirement, the district court properly found a substantial change in circumstances warranted modification of the spousal support. Steven can earn roughly $3700 a month from his social security benefits and a reasonable draw from his retirement accounts. His claimed expenses, excluding the current spousal support payments, amount to about $3900 a month. While his expenses exceed his income, Steven is married and

cohabitates with his wife who is employed as well. In contrast, Linda earns roughly $2375 a month, and could earn a higher yearly income if she worked during summer breaks. Her claimed expenses amount to roughly $3400. As noted, she cohabitates with her boyfriend. We find the district court did equity by reducing the spousal support to $500 a month.

We disagree, however, with the district court's order terminating support upon Linda reaching the age of sixty-two. The court based that decision on its belief that Linda could draw fifty percent of Steven's social security benefits at age sixty-two. *See* 42 U.S.C. § 402(b); 20 C.F.R. 229.46. Under the court's reasoning, Linda could draw fifty percent of Steven's $2819 monthly benefits, which is about $1409. After a reduction in the award due to Linda's ongoing employment, the court calculated she would receive $1162 a month. Combining that award with her regular salary, Linda would be earning about $3500 monthly.

Based on the applicable statutes and regulations, the court miscalculated Linda's award under social security spousal benefits, which is not disputed by Steven on appeal. Linda can only draw fifty percent of those payments if she waits until her full retirement age, which for her is sixty-seven years of age. *See* 42 U.S.C. § 402(q) (limiting benefits for early withdrawals); 20 C.F.R. 404.409(a) (explaining when full retirement age is based on the recipient's birthday). Drawing early reduces the total benefits by a set formula found in 20 C.F.R. § 404.410(b). If she were to draw the benefits when she turns sixty-two, which is when she is first eligible for any spousal social security benefits, she would permanently reduce the benefits to $986 a month. After reducing the award due to her current job, she would only receive social security of about $568 a month, well below the district

court's calculation. As a result, we modify the court's ruling and require Steven to pay Linda $500 a month in spousal support until Linda reaches the age of sixty-seven, Steven's death, Linda's death, or Linda's remarriage, whichever occurs first. At that time, she will be able to draw fifty percent of Steven's social security benefits, approximately $1000 a month from IPERS, and will also have access to her separate retirement funds.

**IV.    Attorney Fees**

Linda requests an award of appellate attorney fees of $9420. When determining such an award, we consider the party's abilities to pay, whether the party resisting modification was successful, and whether a party must defend the trial court's decision on appeal. *Michael*, 839 N.W.2d at 639. Both parties have prevailed to some extent on appeal. *See* Iowa Code § 598.36 (limiting attorney fees to the prevailing party). Considering the financial positions of the parties, we decline to award attorney fees.

**AFFIRMED AS MODIFIED.**