# IN THE COURT OF APPEALS OF IOWA

No. 21-1089
Filed April 27, 2022

IN RE THE MARRIAGE OF TRINA LYNN SHIRBROUN
AND JOSHUA JAMES SHIRBROUN

Upon the Petition of
**TRINA LYNN SHIRBROUN,**
        Petitioner-Appellee,

**And Concerning**
**JOSHUA JAMES SHIRBROUN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Carroll County, Adria Kester, Judge.


        Former spouse appeals the modification of a default decree dissolving his

marriage. **AFFIRMED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        Vicki R. Copeland of Copeland Law Firm, P.L.L.C., Jefferson, for appellee.


        Considered by Bower, C.J., Chicchelly, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**CHICCHELLY, Judge.**

Joshua James Shirbroun appeals the modification of a default decree dissolving his marriage to Trina Lynn Shirbroun. Specifically, Joshua contends the district court should have terminated his spousal support obligation and that it incorrectly calculated his child support payments. Trina has requested that Joshua pay her appellate attorney fees. Upon our de novo review, we affirm the district court's modification and award appellate attorney fees to Trina.

## I. *Background Facts and Proceedings.*

The district court dissolved the parties' marriage by entering a default decree of dissolution on September 17, 2018. During their eighteen-year marriage, Joshua and Trina had four children. Three of the children were minors at the time of the dissolution. The default decree awarded the parties joint legal custody of the minor children and placed them in Trina's physical care. At the time of their divorce, Joshua and Trina were thirty-eight and forty-one years old, respectively. Trina was operating her own daycare business, while Joshua worked for Professional Machinery Assembly (PMA) as an independent contractor. Joshua also completed side construction jobs throughout the marriage and began operating his own construction company in the first half of 2018.

The default decree ordered Joshua to pay Trina $1250 in monthly spousal support for 120 months, which would terminate earlier in the event of either party's death, but not upon Trina's remarriage. It also set Joshua's monthly child support obligation at:

- For three children, $1796.99 plus $60.00 for cash medical support;
- For two children, $1553.31 plus $40.00 for cash medical support;

- For one child, $1093.50 plus $20.00 for cash medical support.

Both the spousal and child support payments were to begin on September 15, 2018, and come due on the fifteenth day of each month thereafter. Joshua's subsequent motion to set aside the default decree was denied, and we affirmed the denial on appeal. *In re Marriage of Shirbroun*, No. 19-0067, 2019 WL 6893947, at *3 (Iowa Ct. App. Dec. 18, 2019).

In January 2020, Joshua filed a petition to modify his spousal support and child support obligations. Shortly thereafter, Trina filed an application to hold Joshua in contempt for failure to make his spousal and child support payments in full. The district court consolidated the modification petition and contempt application. At the time of trial, only two of the parties' children remained subjects of child support, and they continued to reside with Trina. Trina had closed her daycare business due to financial viability concerns, began living with a boyfriend in a different town, and secured a job as a special education aid. Joshua was pursuing his personal construction business full-time. He voluntarily stopped working for PMA after the default decree was entered and the income withholding order was served upon him and his employer.

The district court found Joshua in contempt on several counts, and Joshua does not appeal that decision. As to the modification petition, the court lowered Joshua's monthly spousal support obligation from $1250 to $400, effective June 16, 2021, but it did not disturb the child support obligation. Joshua then filed a motion to enlarge findings of fact, conclusions of law, and to amend ruling, in response to which the district court summarily confirmed its ruling and acknowledged its credibility finding in favor of Trina. Joshua timely appealed.

## II. Review.

Because dissolutions of marriage and modifications to such decrees are tried in equity, our review is de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but are not bound by them. *Id.* "There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991).

## III. Discussion.

Both the spousal and child support determinations are in dispute. Such support orders may be modified when there has been a substantial change in circumstances. Iowa Code § 598.21C(1) (2020). The party seeking a modification of support bears the burden of proving the change in circumstances by a preponderance of the evidence. *In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013). We address the spousal and child support issues separately before turning to the matter of Trina's attorney fees incurred on appeal.

### A. Spousal Support.

Joshua argues his spousal support payments to Trina should be terminated altogether. Spousal support is highly circumstantial and requires an equitable calculation based on certain factors, such as the comparative earning capacities of the parties. *See In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). Because the court has "considerable latitude" in determining an award of spousal support, we only disturb the award if it fails to do equity. *Id.* at 486. Iowa

Code section 598.21C(1) sets forth several factors for our consideration when determining whether to modify an existing decree for spousal support. Of those factors, Joshua contends that two are triggered by Trina's cohabitation with her boyfriend. Iowa Code § 598.21C(1)(a) ("Changes in the employment, earning capacity, income, or resources of a party"), (h) ("Possible support of a party by another person"). He maintains that her boyfriend's support enhances Trina's resources and justifies termination of the spousal support award. Because Trina concedes cohabiting with her boyfriend since August 2019, we look next to whether this fact impacts the support Trina receives and needs.

Once cohabitation is established, "the burden will shift to the recipient to show why spousal support should continue in spite of the cohabitation because of an ongoing need, or because the original purpose for the support award makes it unmodifiable." *In re Marriage of Ales*, 592 N.W.2d 698, 703 (Iowa Ct. App. 1999). Joshua alleges that Trina failed to prove an ongoing need for spousal support, but he stops short of explaining how that is mathematically true. Trina testified that her boyfriend pays $500 to $600 towards the $1306 monthly rental price of their apartment but pays for his own groceries and personal expenses and does not otherwise contribute to Trina's household expenses. Joshua does not dispute the amount of support Trina receives from her boyfriend and does not allege that the boyfriend's payments contribute to Trina's support beyond the cost of his presence in the home. *See Ales*, 592 N.W.2d at 703 (declining to terminate spousal support when a cohabiting paramour's contributions were only sufficient to cover the cost of his presence).

At the time of trial, Trina reported her expenses to be $5400.97 per month. Joshua does not dispute this amount. Trina claimed her monthly net income was $1669.91. With regard to spousal support, Joshua's only challenge to Trina's income is that his accrued, past-due spousal support since 2018 combined with Trina's age, health, education, employment, and cohabitation render her without an "ongoing need" for his support. However, we decline to consider unpaid, past-due spousal support payments when evaluating an individual's present, ongoing need for support. Given that child support is currently set at $1553.31 per month together with $400 in monthly spousal support, Trina's monthly expenses still significantly exceed her income. Moreover, we reject Joshua's claim that Trina no longer needs his support on account of her cohabitation with a new partner. This claim not only lacks specificity, but it also ignores the fact that this partner, unlike Joshua, has no legal obligation to support Trina or the parties' children.

We conclude that the modified award of spousal support was not inequitable. We agree with the district court that Trina presented sufficient evidence to find an ongoing need for spousal support. Trina does not challenge the $400 per month support modification, and Joshua accepts this amount if we decline to terminate spousal support. We affirm the district court's modification order, and Joshua's monthly spousal support will remain at $400.

*B. Child Support.*

Joshua argues that the parties' respective incomes were incorrectly calculated when determining child support, and therefore, his portion should be reduced. Child support determinations are subject to the guidelines established by the Iowa Supreme Court in chapter 9 of the Iowa Court Rules. While new

guidelines became effective in 2022, we must look to the version of the guidelines in effect at the time of trial. Iowa Ct. R. 9.1.

"Before applying the guidelines there needs to be a determination of the net monthly income of the custodial and noncustodial parent at the time of the hearing." *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 332 (Iowa Ct. App. 2005). To arrive at each parent's net income, we determine gross monthly income, which is "reasonably expected income from all sources," less certain deductions specified in the guidelines. Iowa Ct. R. 9.5(2). "The court must determine the parent's current monthly income from the most reliable evidence presented. This often requires the court to carefully consider all of the circumstances relating to the parent's income." *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991).

We turn first to the calculation of Joshua's income. The default decree entered in Joshua's absence was based on Trina's estimation of Joshua's annual income at $155,000. In connection with his petition for modification, Joshua offered his income tax returns but conceded that his net monthly income is higher than reported. Joshua's tax returns indicate his net income was $27,486; $31,201; and $25,445 in 2018, 2019, and 2020, respectively, after certain expenses and depreciation. Joshua's corresponding gross income was reportedly $140,147; $157,864; and $127,932, respectively.

Joshua stopped working for PMA in late 2018, and his income in 2019 and 2020 was derived entirely from his personal construction business. Joshua could not explain the discrepancy between his reported gross receipts of $127,932 in 2020 and deposits into his business banking account totaling over $170,000. Joshua provided only summary statements to his accountant for preparation of his

tax returns. Joshua has paid for personal expenses from his business account on numerous occasions without clear recordkeeping. Since the divorce, Joshua has taken several trips, including to the Bahamas and Las Vegas, as well as purchased a home and financed the purchase of a truck for more than $70,000. At the same time, he has ignored his court-ordered spousal and child support obligations, choosing to make only inconsistent $650 payments even when three children were minors.

Joshua argues his actual income should be valued at $47,310 based on an average of his estimated 2020 and 2021 incomes. He claimed that his 2020 income was approximately $51,123 based on the combination of his personal draws and personal expenses paid by his business income. Under this approach, he estimated his 2021 income would be approximately $44,400. Trina asserts that Joshua underreported his income and that it is closer to $82,000 per year, all nontaxable. In its modification order, the district court found Joshua had reduced his employment to prioritize his career preferences over the material needs of his children. It therefore imputed his annual income at $82,000 based on his earning capacity pursuant to Iowa Court Rule 9.11(4), which stipulates:

> The court may impute income in appropriate cases subject to the requirements of rule 9.5. If the court finds that a parent is voluntarily unemployed or underemployed without just cause, child support may be calculated based on a determination of earning capacity. A determination of earning capacity may be made by determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earning levels in the community and other relevant factors. The court shall not use earning capacity rather than actual earnings or otherwise impute income unless a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.

The district court stated it was imputing Joshua's income "[t]o do justice between the parties and provide for the needs of their children." We renew this determination. Joshua acknowledges his income is lower than as set forth in the default decree. However, "parents who reduce their income through an improper intent to deprive their children of support or in reckless disregard for their children's well-being are not entitled to a commensurate reduction in child support payments." *In re Marriage of Walters*, 575 N.W.2d 740, 741 (Iowa 1998) (citation omitted). Joshua testified that he was not terminated from PMA, nor did he quit. Joshua could work for PMA at any time and had agreed to work a couple of jobs for PMA in 2021. In any event, we find Joshua's reported income unreliable and give deference to the district court's credibility finding in favor of Trina. Based on the record evidence and this deference, we affirm the district court's adoption of Trina's alleged income for Joshua: $82,000 per year, all nontaxable.

We turn next to Trina's income. At the time of trial, Trina was employed as a special education aid working 37.5 hours per week for 182 days per year at $14.55 per hour. Since 37.5 hours per week is 7.5 hours per school day, we multiply 7.5 by 182 by $14.55 to find Trina's income at $19,860.75.[1] Joshua argues that Trina should be expected to find a part-time job to work an additional 2.5 hours per week during the school year and also work during the summers. Trina argues

---

[1] Trina also received $750 per month in rental income from the couple's marital home. However, she reported that the mortgage payment, insurance and property taxes increased to $730 per month, leaving only twenty dollars per month to cover other expenses at the marital home. Because Trina claimed repairs totaling $1023 for the home in 2020, the rental income does not sufficiently affect Trina's monthly income to alter our analysis.

that such an expectation is unreasonable because it would require her to find childcare services, the cost of which would result in any summer employment making an uncertain and probably negligible impact on her income. We agree. *See In re Marriage of Bechthold*, No. 17-1191, 2018 WL 5849006, at *1 (Iowa Ct. App. Nov. 7, 2018) (declining to impute a summer earning capacity to a former spouse who served as the children's primary caretaker).

The district court did not fully adopt either of the parties' support calculations in its order, nor did it include with its order a calculation of its own. However, the court's order provided sufficient factual findings for this court to ascertain the appropriate level of child support pursuant to the Iowa Child Support Guidelines. Accounting for spousal support in the amount of $400.00 per month from Joshua to Trina, we find that the guidelines support a monthly support award in Trina's favor of $1461.67 for two children and $1027.71 for one child. The child support ordered by the default decree falls within ten percent of these figures. Accordingly, there is no basis for a substantial change in circumstances, and we affirm the lower court's ruling. *See* Iowa Code § 598.21C(2)(a) (declaring that a "substantial change of circumstances exists when the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines"). Joshua's child support obligations will continue in the amounts originally decreed.

*C. Attorney's Fees.*

Trina requests that Joshua be ordered to pay a majority of the attorney fees she has incurred in this appeal. An award of attorney fees is a matter of our discretion and not merely a matter of course. *In re Marriage of Benson*, 545

N.W.2d 252, 258 (Iowa 1996). "We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal." *Ales*, 592 N.W.2d at 703. Trina has reportedly incurred $9000 in this appeal and requests Joshua pay $7500. We find that Trina has prevailed in defending the district court's decision on appeal, and Joshua maintains a significantly higher income. Accordingly, we find an award of attorney fees is reasonable and warranted. We hereby order Joshua to pay $7500 of the attorney fees incurred by Trina in this appeal.

### IV. Disposition.

Because Trina has demonstrated an ongoing need for spousal support and Joshua has failed to prove a substantial change in circumstances from the child support ordered, we affirm the district court's modification of the dissolution decree. We furthermore award Trina $7500 in appellate attorney fees.

**AFFIRMED.**